LINCOLN L. McCANDLESS *v.* JOHN II ESTATE, Limited.

APPEAL FROM A DECREE OF A CIRCUIT JUDGE OF THE FIRST CIRCUIT OVERRULING A DEMURRER.

SUBMITTED OCTOBER 6 AND 7, 1898.     DECIDED APRIL 20, 1899.

JUDD, C.J., WHITING, J., AND H. E. COOPER, ESQ., OF THE BAR, IN PLACE OF FREAR, J., ABSENT.

A husband marrying a wife owning real estate, before the Married Woman's Act of 1888, has the right to lease or otherwise dispose of her real property with her written consent for a definite term pending his natural life.

The "agreement" recited in the decision held not to create a revocable license, but an interest in land and resembles a lease. That the husband under the agreement, created thereby a special partnership with plaintiff, does not make the disposition of his wife's land for certain purposes an illegal exercise of his marital right.

A covenant by a lessor that the land be used in a particular way can be enforced in equity.

The reservations in the agreement of certain portions of the whole land of "Waipio" indicate that the parts not reserved were intended by the parties to be used for the purposes set forth in the agreement, that is, for the "breeding and fattening of cattle," under the terms and conditions in the agreement set forth.

The covenant that the land be used in a particular way binds the covenantee and his assigns who take with notice.

Where a covenant is capable of specific enforcement, its threatened breach may be enjoined.

OPINION OF THE COURT BY JUDD, C. J.

The under recited agreement became the subject of the present litigation:

"This agreement made and entered into this 6th day of September, 1893, between Lincoln L. McCandless of Honolulu, in the Island of Oahu, the party of the first part, and Charles A. Brown, of the same place, the party of the second part.

Whereas the said party of the first part, is the owner of three hundred and fifty (350) head of cows and heifers on the said Island of Oahu, and Irene Ii Brown, the wife of the said C. A. Brown, is the owner of the tract of land known as the Ahupuaa of Waipio and of other ilis and lands situate within the said Ahupuaa of Waipio, situate in the District of Ewa, Island of Oahu, aforesaid, and whereas the said party of the second part, by and with the consent of his said wife Irene Ii Brown, signified by her execution of these presents has agreed to and with the said party of the first part, that the said three hundred and fifty (350) head of cows and heifers shall be put to pasture on the lands of said Irene Ii Brown in said district of Ewa upon the terms and conditions hereinafter set forth, and together with their increase shall be held and sold on the joint account of the party of the first and second part in equal shares.

Now this agreement witnesseth that in pursuance of the premises and in consideration of the mutual benefit to be derived by the parties hereto, he the said party of the first part, doth hereby for himself and his executors and administrators promise and agree to and with the said party of the second part, and his executors, administrators or assigns, that he will, within six months from the date of the finishing of the mountain fence, hereinafter agreed to be built, drive and place upon the Ahupuaa of Waipio and other lands in said district of Ewa lying within the same Ahupuaa, three hundred and fifty (350) head of cows and heifers, no heifer to be under one year of age, to be owned together with their increase by the said party of the first part and the second part on joint account and equal shares;

That he will build at his own cost and expense a mountain fence from the Waiawa fence to the fence dividing Waipio from Waianae-uka;

That he will furnish at his own cost and expense three (3) bulls of pure or part polled Angus breed, for breeding purposes for the original herd of three hundred and fifty (350) head;

That he will brand the said herd of three hundred and fifty cows (350) and heifers and all their increase with a brand to be registered as the joint brand of the parties of the first and second part;

That he will allow during the term of this agreement one-half

($\frac{1}{2}$) of the number of cattle that he may have the right to deliver by reason of his 1-32 interest in the Metropolitan Meat Co. to be delivered from said lands from partnership cattle for their joint account;

That he will not make any charge for services rendered by him in the carrying out of the agreements herein contained, or of the business for which these presents are entered into;

That when any of the cattle or live stock are fattened and ready for sale, he will sell or cause the same to be sold, and the proceeds thereof after deducting expenses of driving and delivering shall be equally divided between the parties of the first and second part;

And the said party of the second part for himself and his executors, administrators and assigns doth hereby promise and agree with the said party of the first part and his executors administrators and assigns that he and they may and shall pasture and herd all said three hundred and fifty (350) head of cows and heifers and their increase and all bulls used for breeding purposes on the lands now used for pasturage, (the party of the second part reserving all lands now used for the cultivation of rice and taro, and the two fish ponds and sea fishery; the land now used for making salt; all Konohiki house lots, the present house lot with vegetable garden mauka of same; the paddock between the house and depot and the small paddock makai of house now occupied as a ranch house, by the party of the second part), in the said Ahupuaa of Waipio and other lands within said Ahupuaa free of charge during the term of this agreement;

That he will turn over all wild unbranded cattle running upon the said Ahupuaa of Waipio and other lands within or adjoining said Waipio and under his control to be held and owned for the joint account of the parties of the first and second part;

That he will turn over all his tame herd of cattle now running on said land or lands and branded J I and  B  to be held and owned for the joint account of the parties of the first and second part;

And it is mutually agreed between the parties of the first and second part, that this agreement shall be in force for the term of fifteen years, from the date hereof fully to be complete and ended;

That all net profits shall be divided equally;

That all expense connected with the business, to wit, Branding, driving, freight, repairs to existing fences and houses used in the business, and the mountain fence erected by the party of

the first part, taxes on live stock and buildings as above, and upon all portions of land used as pasturage and all other expenses incidental to the business shall be borne equally;

That the said party of the first part shall have the sole management, control, supervision, conducting and carrying on the cattle business entered into under this agreement;

That all disputes shall be settled by arbitration; that the said party of the second part shall cause all Konohiki laborers or natives pasturing stock upon said land or lands, to work one day in each month for the partnership, for each and every head of stock running on said land;

That the said party of the first part shall have the right of pasturing upon said land or lands free of charge ten head of horses or mares;

That the said party of the second part, and his said wife, Irene Ii Brown, his son George Ii Brown, and Mrs. George K. Norton, the sister of his said wife, shall have the right of pasturing upon said land or lands, all horses belonging to them not to exceed in the aggregate 100 head, and all cattle branded J I and  B and belonging to his said son George Ii Brown, not to exceed on the whole one hundred head of cattle;

That should at any time the United States Government desire to purchase the peninsula known as Pahao or any portion thereof, the same shall be sold free and clear of this agreement, and without any claim for damage to be made by the party of the first part by reason of such sale;

That the said party of the first part will not buy any Kuleanas within said Waipio or lands within its boundaries;

That the parties of the first and second part shall contribute towards the rent of the land known as Waikakalaua the sum of Forty Dollars per annum and taxes during the term of this agreement;

That this business shall be carried on under the firm name or style of Brown & McCandless;

That at any time when store cattle are bought with the proceeds realized from the sale of partnership property or stock, such store cattle shall be held and owned upon joint account and equal shares;

That should at any time the party of the first part, purchase store cattle with private means and money, and such store cattle are put upon said land or lands for fattening, that then ($\frac{1}{4}$) of the net account sales of such store cattle or stock shall be paid to the party of the second part in lieu of any charge for pastur-

age, provided however that the party of the first part shall before placing and putting said cattle so purchase upon said land or lands, obtain the written consent of the party of the second part;

That upon the expiration of the term of all present existing agreement or contracts to fatten cattle, upon shares or upon a percentage of their net account sales, the said party of the second part will not enter into any other or further agreements or contracts to fatten cattle upon shares, or upon a percentage of their net account sales, without the written consent of the party of the first part first had and obtained, and all profits that may be derived under or by virtue of any such agreement or contract shall ensue to the benefit and joint account of the parties of the first and second part in equal shares;

That all existing agreements of pasturage for work oxen and horses of Chinese rice firms on Waipio-uka shall enure to the benefit of the party of the second part, but after two years from date hereof the pasturage charge for the taking on pasturage of such work oxen and horses shall be raised by the said party of the second part as follows: for the working oxen Eight Dollars ($8.00) per year, for all working horses Nine Dollars ($9.00) per head per year, except in such cases where a contract is in existence for a specified price per head per annum;

That the said party of the second part shall have the right to take on pasturage upon Waipio-uka only, not more than 250 head of work horses and 150 head of work oxen, the pasture fee for same to enure to his sole use, benefit and advantage for the first three years of the existence of this agreement; after the expiration of said term of three years all money received as pasturage charges for all stock upon said lands shall be for the joint benefit of the parties of the first and second part in equal shares;

That after the expiration of said three years should the taking on pasturage of such work horses and oxen in the opinion of the party of the first part in any way interfere with or decrease the pasturage of the joint stock thereof, then and in such case no more stock shall be taken to pasture and all work horses and oxen then pasturing on said lands shall be removed and taken away;

That at the expiration of the term of this agreement, the said party of the second part shall have the first option of purchasing the interest of the party of the first part in the herd of cattle and their increase then upon the land or lands;

That in the event of the parties here failing to agree upon a price to be paid by one to the other for his share or interest in

said herd of cattle then and in such case the herd shall be divided equally, such division to be made by arbitrators, one to be chosen by each party and the two then chosen to select a third and the decision rendered or apportionment made shall be final and conclusive;

That in case of a division as hereinbefore provided, then the said party of the first part shall have the time of six months in which he may remove and take away his share or half ($\frac{1}{2}$) of said cattle, and no charge of pasturage for said term of six months shall be made by the party of the second part;

And that all improvements made or put upon or any buildings erected upon said land or lands shall at the expiration of the term of these presents revert to and become the property of the said party of the second part; that all accounts shall be balanced and a settlement made between the parties hereto every twelve months; that in case of the absence of the party of the first part from the Hawaiian Islands that then and in such case the said party of the second part shall have the management, control and supervision, conducting and carrying on of said cattle business during such absence;

In Witness Whereof, the said parties of the first and second part, and the said Irene Ii Brown in token of her consent and confirmation of the agreements hereinbefore set forth, and of the execution of these present, have hereunto set their hands and seals, the day and year first above written."

Following is the bill before us:

"The bill of complaint of the above named plaintiff, Lincoln L. McCandless, respectfully shows as follows:

1.    That the Plaintiff is a resident of said Honolulu and that the defendant is a Hawaiian corporation having its principal office and place of business in said Honolulu.

2.    That upon the 6th day of September, A. D. 1893, the plaintiff being then the owner of 350 head of cows and heifers on the said Island of Oahu, and Irene Ii Brown, wife of Charles A. Brown, of said Honolulu, being the owner of the Ahupuaa of Waipio and of certain ilis and lands within said ahupuaa situate in the District of Ewa in said Island of Oahu, did with the consent of the said Irene Ii Brown enter into a certain agreement, a copy whereof is hereto appended and made a part hereof, with the said Charles A. Brown, which said agreement was consented to and confirmed by the said Irene Ii Brown.

3.    That in and by the said agreement it was agreed by the

said Charles A. Brown and Irene Ii Brown that for and during the term of 15 years from said 6th day of September, A. D. 1893, the plaintiff and his executors, administrators or assigns might and should pasture and herd, free of charge, all said 350 head of cows and heifers and their increase and all bulls used for breeding purposes on the lands then used for pasturage in the said Ahupuaa of Waipio and other lands within said ahupuaa, and that the said Charles A. Brown would turn over all wild unbroken cattle running upon the said Ahupuaa of Waipio and other lands within or adjoining said Waipio and under his control to be held and owned for the joint account of the plaintiff and the said Charles A. Brown, and that he, the said Charles A. Brown, would turn over all his tame herd of cattle then running on said lands to be held and owned for the joint account of the plaintiff and the said Charles A. Brown, dividing equally all net profits and bearing equally all expenses;

And that the plantiff should have the sole management, control, supervision, conducting and carrying on of the cattle business entered into under said agreement;

Excepting, however, and reserving from the operation of said agreement the land then used for rice, taro, fish-ponds, sea-fishing and salt lands, and certain house lots and paddocks, as in said agreement expressed;

And with certain other conditions and stipulations which fully appear in said written agreement.

4. That the plaintiff placed his said herd on said land and that said herd, with its increase, except such cattle as have been sold in the ordinary course of the business of a cattle ranch, are, together with the cattle agreed as aforesaid to be placed thereon by said Charles A. Brown, now pasturing and running on said land, and that the plaintiff has to this date managed and carried on the cattle ranch so formed as aforesaid, and is now managing and carrying on the same, and has in all respects done and performed all the acts and things required by said agreement to be done and performed by him.

5. That on the 2nd day of July, A. D. 1897, the said Charles A. Brown and Irene Ii Brown transferred and conveyed to one Holmes, who thereupon transferred and conveyed to the defendant, the said land and all their cattle thereon and all their rights under the said agreement, and that the defendant now holds the property so conveyed and has since exercised and now exercises all the rights secured to said Charles A. Brown and Irene Ii Brown under said agreement, and has accepted and undertaken

and is liable and subject to all the covenants and stipulations which the said Charles A. Brown and Irene Ii Brown, and each of them, made and entered into in and by the said agreement.

6.    That the herd of cattle now held under said agreement by the plaintiff and defendant and running and pasturing on said land number from 600 to about 700 head:

7.    That the deep gulch, called the Kipapa Gulch, is in said land and is part of the land on which said cattle run and pasture and since said agreement have run and pastured:

8.    That the water naturally flowing in and through the said gulch, varying greatly in wet and dry seasons and in times of freshets, has always heretofore been available and of great use and benefit to the cattle running on said lands, and that there are many natural receptacles, pools, depressions and pockets in said gulch in which water has always heretofore accumulated in times of freshets or of wet seasons and there remained for the use and benefit of said cattle until consumed by the cattle and disappearing by natural causes of evaporation, or otherwise, and that in dry times the said cattle largely depend for their drinking water upon water so collected and standing as aforesaid in such receptacles, pools, depressions and pockets in said gulch:

9.    That the defendant on the 15th day of April last informed the plaintiff that it was negotiating with the Oahu Sugar Co., Limited, for a lease of the water in said gulch and a portion of the makai part of said land of Waipio, and the defendant would "refuse to recognize any rights of Brown and McCandless in the matter," meaning thereby and including any rights of the plaintiff in or under the said agreement:

10.    That the defendant claims that it has the right to lease and asserts that it is about to lease to said Oahu Sugar Co. two large tracts of land being portions of said Ahupuaa of Waipio, one of said tracts containing about 200 acres and lying between the Oahu Railroad track and the Government Road to Waianae, and the other tract containing about 1400 acres, situate on the peninsula and known as Pahao;

And also to grant to said Oahu Sugar Co. the right to divert and take from said Kipapa Gulch all the water which the defendant and said Oahu Sugar Co., one or both of them, should claim to be not required for the uses and purposes of the cattle and business mentioned in said agreement;

And also to grant to said Oahu Sugar Co. the right to build such flumes and ditches and make such reservoirs as the said Oahu Sugar Co. should deem to be necessary or proper on the

lands named in said agreement and not leased to said Oahu Sugar Co.

11. That the lands so proposed by the defendant to be leased to the said Oahu Sugar Co. are part of the lands heretofore used and now in use for cattle ranching under the said agreement, and are necessary and proper for the full benefit, use and enjoyment of said lands for a cattle ranch or for the purposes named in said agreement.

12. That the defendant also claims that it has the right and asserts that it is about to grant to the said Oahu Sugar Co. the right to tap the stream now and heretofore flowing in said gulch at or near the head or source of said stream in order thence to divert the water as above mentioned, and that such tapping of said stream and such diversion of said water would, except in times of freshets, result in drying up the bed of the stream of water heretofore flowing in said gulch.

13. That the granting of said lease and water rights as aforesaid would authorize and permit the said Oahu Sugar Co. to dig and maintain many water ditches over and across the lands heretofore and now held for said cattle ranching, and that such ditches would be required in order to exercise the rights proposed to be granted as aforesaid under said lease and water grant, and that many of the cattle now and heretofore running on said lands under and in conformity with said agreement would be liable to be seriously injured or killed in running or being driven across, into or over such ditches and that such ditches would also be a material and serious obstruction to the driving of said cattle across the range in the cattle drives which the said cattle business requires as stated periods:

14. That if the defendant shall make such lease of land and grants of water as above mentioned, the said lands and the water thereto appurtenant will, by reason of the matters and things above mentioned, become less valuable and useful for purposes of a cattle ranch as provided for under the terms and conditions expressed in said agreement;

And the plaintiff will be subjected in the premises to great and irreparable loss and injury, and the defendant in so doing would violate the terms of said agreement:

15. That the defendant has requested the plaintiff to consent to the lease and grants of water rights above mentioned and that the plaintiff refuses to consent thereto, and has requested the defendant to desist from the same, with which request the defendant declines to comply;

And that the plaintiff is informed by the defendant and believes that the defendant will, unless restrained by a writ of injunction issuing out of this Honorable Court, make the lease of land and grants of water and of other rights herein mentioned, and such injunction is here prayed for.

Wherefore, the plaintiff prays:

1.   That the defendant be summoned to appear and answer hereunto and be bound by all the proceedings to be had therein:

2.   That the defendant, its officers, agents and servants, be enjoined by writ of injunction issuing out of this Honorable Court from making any lease of any of the land now and heretofore used for said cattle or cattle ranch, and from making any grant of any water or rights of water, or rights to make or maintain ditches, flumes or reservoirs in or upon any of said lands:

3.   For such other and further relief, orders and decrees as may be requisite and proper."

Following is the amendment:

"The plaintiff with the consent of the Court, hereby amends his bill herein by adding thereto a new paragraph numbered 2a.

"2a.   That the said Charles A. Brown and the said Irene Ii Brown were married on the 30th day of September, 1886, at a time when by the laws of Hawaii, the husband by virtue of his marriage, unless otherwise stipulated by express contract, have the custody, use and usufruct, rents, issues and profits of all property of a fixed and immovable nature, belonging to his wife before marriage, or accruing to her after marriage; and by virtue of which he could, with her written consent, rent or otherwise dispose of the same for any term not exceeding the term of his natural life;

That neither at the time of the marriage of the said C. A. Brown and Irene Ii Brown nor before or since then was any stipulation by express contract or otherwise, by virtue of which the said C. A. Brown was deprived of any of the rights, powers and privileges conferred upon him by the said law last above referred to, made or entered into;

That on the said 30th day of September, 1886, the said powers, rights and privileges above enumerated, by virtue of said law and said marriage accrued to and became vested in the said C. A. Brown, into and concerning all of the property of a fixed and immovable nature, belonging to his said wife before said marriage, and continued to belong to and be vested in him up to

and including the said 6th day of September, 1893, the day of the date of the said agreement the subject of this suit;

That the said Ahupuaa of Waipio and other lands in said agreement mentioned, to be occupied for the purposes of said agreement, were the lands of the said Irene Ii Brown at and before the said date of her said marriage, and upon said marriage became subject to the use usufruct, control and disposal of her said husband, in accordance with said law, and so continued up to and including the said 6th day of September, 1893, the date of said agreement."

This bill was demurred to by defendant on the ground that it does not disclose facts sufficient to constitute a cause of action and that the plaintiff has a complete and adequate remedy at law. The circuit judge overruled the demurrer, and the defendant's appeal from the decree was heard by us at the September term, 1898. We have found the issues of law raised in this case to be numerous and difficult of solution.

The plaintiff's contentions are that the agreement binds Charles A. and Irene Ii Brown and their assigns the John Ii Estate for the term of fifteen years. The agreement gives plaintiff an interest in the land which cannot be cancelled at the will of the Browns nor of the defendant, their assigns. The agreement does not create a revocable license but a virtual lease of the land. Equity should enjoin the alienation by defendant by way of lease or otherwise any portion of the land or water inconsistent with their use as pasturage and water for cattle under the agreement. The lease contemplated to be made by defendants would diminish the value of the land to the plaintiff as a cattle ranch and subject him to irreparable loss and injury and would be in violation of the terms of the agreement.

The defendant claims that the agreement created a mere license revocable at will with notice to plaintiff. That the agreement created a partnership between the parties, and not a lease of the land; that a suit for damages in case the proposed lease was made would afford compensation to plaintiff.

We first consider the legal status of C. A. Brown when he executed the agreement. He was in 1886 married to Irene Ii who

owned the land in question. The Married Women's Act was passed in 1888. Mr. Brown's status must be settled by the law in force in 1886, which was Section 1286 of the Compiled Laws: "The husband shall in virtue of his marriage, unless otherwise stipulated by express contract, have the custody, use and usufruct, rents, issues and profits of all property of a fixed and immovable nature belonging to his wife before marriage, or accruing to her after marriage; and he may, with her written consent, rent or otherwise dispose of the same for any term not exceeding the term of his natural life." That this vested right of the husband was not affected by the subsequent Act of 1888, see *Nam Chong & Co. v. Lau Kona*, 9 Haw. 373.

Mr. Brown, then, having the legal right to lease or "otherwise dispose" of his wife's property had, during the term of his natural life, the right to enter into the agreement, his wife consenting to it. The incident of his making the agreement take the form of a partnership with plaintiff by which he, Brown, contributed to its assets (or partnership capital) the use of the land upon which the cattle contributed by him and by plaintiff were to be pastured, in the gains from which they were to share, does not make his agreement any the less a legal disposition of the use of his wife's land during the term of his (Brown's) natural life. It was suggested in the defendant's brief that a subsequent divorce of Mr. Brown has destroyed his estate in his wife's land. But this defense is not in issue on the demurrer and we cannot consider it. The defendant corporation has succeeded entirely to the rights and obligations of Brown in the agreement. The bill so alleges and the plaintiff made no objections to his new partner, the defendant. Whether the defendant could terminate it is not in issue on the demurrer. The defendant has thus far done no act looking to this. We have called the agreement a "partnership." It seems to us to have the ingredients of a special partnership.

But it is contended that a revocable license only by Mr. Brown or Mrs. Brown or both of them was created by the agreement in favor of plaintiff. A " license " in the law

of real property is an " authority to do a particular act or series of acts upon another's land without possessing any estate therein." 13 Ency. Law, 539; Wash. R. P. 629. It is a personal privilege, is not assignable, ceases upon the death of either party and is revoked by a sale of the land by the licensor. But the agreement expressly binds the executors, administrators and *assigns* of the parties. (Whether the stipulation in the agreement for the personal services of the plaintiff in conducting the business would survive his death is not raised by the demurrer.) If the instrument in question passes to the plaintiff a right to use the land for a definite term for a specific purpose, the grazing thereon of cattle, it creates an "interest" in the land, and therefore it does not create a license revocable at the will of the licensor, and it is immaterial whether the licensor be Mr. Brown in the exercise of his marital right, or Mrs. Brown, the then owner, to the partnership consisting of her husband and the plaintiff. The evident intention of the parties was to demise the pasturage of the land in question to plaintiff for the term of 15 years and Mr. Brown shared in the profits as a partner of plaintiff. This grant was in writing, signed by the parties, and was supported by valuable considerations moving from plaintiff. He was to furnish a certain number of cattle, put up a mountain fence, to procure and register a new brand as the joint brand of the joint concern, to allow the concern to furnish for market one-half of the cattle allowed himself under his interest in the slaughtering company; to attend to and manage all the business of the concern without charge, to pay half of the taxes on the property used by the concern, half the rent of the land of Waikakalaua, one-half of the repairs of buildings and fences and covenants, not to purchase kuleanas in Waipio.

The reservations by Brown are numerous, i. e., the lands now used for the cultivation of rice or kalo, two fish ponds, the sea fishery, the land used in making salt, konohiki house lot; the present house lot and vegetable garden mauka, the paddock between the house and depot, and small paddock makai of ranch house. That the intention of the parties was to place at the dis-

posal of the partnership all the land of Waipio for pasturage, excepting only the portions reserved by Brown, is made clearer by the clause, "That should at any time the United States Government desire to purchase the peninsula known as 'Pahao,' or any portion thereof, the same shall be sold free and clear of this agreement, and without any claim for damage to be made by the party of the first part by reason of such sale." Certainly if the parties thought that *all* of Waipio, a part of which Pahao is, was placed by the agreement in the use of the copartnership for pasturage, it would need a clause of the above character to allow any part of it to be sold and the area of the range of the cattle diminished without a claim for damage on the part of the plaintiff. Is it not inferrable from this special clause that the parties intended that the whole land was to be dedicated to the pasturage purposes of the partnership? It is contended by the defendant that the clause that "Pahao" may be sold "without claim for damage" by plaintiff shows that the parties have chosen as the forum for redress a *law court* for damages and excludes the jurisdiction of a court of equity to enjoin the execution of a lease by defendant which would diminish the area of the pasturage. We hardly think that the plaintiff intended to be restricted to a law court by this language. He was thinking of redress in general and was willing to forego whatever remedy he would have, if the sale to the United States Government should take place. We hold that the intention of the parties to the agreement was to part with the occupation of all the land of Waipio, except the reserved portions, to the partnership for pasturage of cattle put on the land to breed and fatten for sale. Whether this be called a license coupled with an interest, an executed license, or a lease it is immaterial. It seems to us to be more like a lease than any other interest so far as the use of the land is concerned. And this character does not seem to be affected by the interest which Brown had reserved in the partnership in lieu of rent. And yet it is not a lease in that it gave the partnership or either party to it a right to make whatever use of the land it chose. The "interest" of plaintiff in the land is limited to his

use of it for the food and water is produced as sustenance of the cattle of the partnership and he could not use it for any purpose not essential to this purpose. Then why could the defendant divert any portion of the land by lease or sale from the special use to which it was devoted by the agreement? It could not, if by so doing the interest of the plaintiff as copartner was injured. It is averred in the bill that that such an act would produce irreparable injury. Of course such averment would have to be established. Whether equity alone has cognizance of such a cause of action is the most difficult question arising in the case.

The application herein made is for an injunction to restrain defendant from violating its contract.

Mr. Pomroy says, "If the owner of land enter into a covenant concerning the land, concerning its use, subjecting it to easements or personal servitudes and the like and the land is afterwards conveyed or sold to one who has notice of the covenant, the grantee or purchaser will take the premises bound by the covenant and will be compelled in equity either to specifically execute it, or will be restrained from violating it," &c. 2 Pom. Eq. Jur. Sec. 689. One of the cases cited is *Tulk v. Moxhay*, 22 Eng. Ch. Cas. 774 (2 Phillips). The head note is, "A covenant between a vendor and purchaser, on the sale of land, that the purchaser and his assigns shall use or abstain from using the land in a particular way, will be enforced in equity against all subsequent purchasers with notice, independently of the question whether it be one which runs with the land so as to be binding upon subsequent purchasers at law." Lord Cottenham, Chancellor, said, "That this court has jurisdiction to enforce a contract between the owner of land and his neighbor purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed." The Chancellor also says, "If an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

Now if a purchaser with notice, of the land of a covenantor

can be compelled to perform the covenant much more can the covenantor himself be compelled to perform it; and if the covenant can be enforced against him, he can be enjoined from violating it.    3 Pom. Eq. Secs. 1338-1402.

The jurisdiction of courts of equity by injunction against the breach of covenant or agreement is in aid of the legal right and has been assumed for the advancement of justice.    Kerr, Inj. p. 492.

"It is not necessary that the breach in respect of which the interference of the court is sought should have been actually committed; it is enough that the defendant claims and insists on his right to do the act complained of, although he may not have actually done it."   *Id.* p. 494 and *id.* p. 198.   The allegations of the bill are sufficient in this respect.

Another reason for sustaining the bill is, that it is doubtful if plaintiff could bring an action at law for damages against his "co-partner" the defendant.   It seems to us that the court can specifically enforce the agreement and it is extremely doubtful if a resort to an action at law for damages, if it could be brought, would afford compensation.   How could the damages be computed considering the numerous conditions and covenants of the agreement and the term of its continuance,   The remedy at law must be "plain, adequate and complete."

We therefore confirm the decree appealed from, overruling the demurrer.

*A. G. M. Robertson, A. S. Hartwell, Cecil Brown* and *L. A. Thurston* for plaintiff.

*J. A. Magoon & R. D. Silliman, Kinney & Ballou* for defendant.