252 S.W.2d 635 (1952)
AMITIN et al.
v.
IZARD et al.
No. 28491.
St. Louis Court of Appeals, Missouri.
November 18, 1952.
Rehearing Denied December 12, 1952.
*636 Jones & Alexander, D. Calhoun Jones, Philip S. Alexander, St. Louis, for appellants.
White, White & White, Samuel White, Louis E. Zuckerman, St. Louis, for respondents.
HOLMAN, Judge.
Plaintiffs (respondents) instituted this action seeking to enjoin defendants (appellants) from interfering with their use of a private road upon which was located property owned by plaintiffs. It was alleged that the defendants placed barricades (wooden horses) on a portion of said roadway and erected a number of signs thereon reading, "Private RoadKeep Out." In addition to an injunction plaintiffs sought to recover $5,000 actual and $10,000 punitive damages as a result of the actions and conduct of defendants in relation to said road. Defendants, Harry and Rose Izard, filed counter-claims totaling $15,000 against plaintiffs upon which the court ordered a separate trial.
The appeal herein was originally taken to the Supreme Court, but that court determined that the jurisdiction was in this court, to which the cause was transferred.
In 1934 Dr. and Mrs. John C. Doubek purchased a tract of land in St. Louis County containing 5.453 acres which was bounded on the north by Gravois Road. They built a residence upon the northeast corner of the tract, the same being known and numbered as 9290 Gravois Road. On March 10, 1936, the Doubeks executed an instrument entitled, "Establishment of Private Road," by which they created a private road 30 feet wide and 400 feet long extending southwardly from a point on the south line of Gravois Road approximately 150 feet west of the northeast corner of their tract. Immediately after the description of the entire tract there appears in said instrument this recital, "And Whereas, it is the intention and purpose of said parties hereto to develop said tract of land; to facilitate said development it is necessary to establish a private road, 30 feet wide, through a part of said property."
*637 After describing the proposed road the instrument further recites, "Which said private road shall be for the joint use and benefit of the present and future owners of the property abutting thereon, their heirs and assigns." This instrument was recorded the following day. Also on the 10th day of March, 1936, the Doubeks executed a deed to Charles Strattman and wife conveying a tract which fronted on the south 174 feet of said 400 foot private road on the west side thereof. This deed specifically granted a right of way over said private road. Two houses were built on this tract and the property was later reacquired by the Doubeks and was owned by them at the time this suit was instituted, the houses being occupied by a son and a daughter. These houses are generally referred to as being located on "Doubek Court." The Doubeks also caused an all weather surface 17 feet wide to be placed on this private road.
On January 7, 1946, the Doubeks sold their residence to the defendants, Harry and Rose Izard. The tract conveyed fronted 150 feet on Gravois Road and extended along the east side of said private road for a distance of 316 feet from the south line of Gravois Road. At about the same time their son, the defendant, Carleton F. Izard, purchased from the Doubeks a tract on the west side of the private road which had a frontage on Gravois Road of 105 feet and extended back along said private road to the Strattman tract. On April 20, 1946, the Doubeks deeded all of the remainder of their land to plaintiffs, Samuel R. and Janet Amitin, and Charles and Ruth E. Weber, Jr. This deed did not specifically grant a right of way over the private road.
Mr. Sam Ziden, a real estate broker, was the agent for Dr. Doubek and wife in the sale of all of the tracts heretofore mentioned. Shortly thereafter Mr. Ziden, the father-in-law of Samuel Amitin, undertook to develop the land purchased by Amitin and Weber into what became known as Ziden Subdivision. At the expense of $7,-000 they established and paved an extension of the private road to a point almost to the south end of the tract, which extension was named Darlene Drive. As a part of this project they paved or resurfaced the south 84 feet of the private road. They also improved and paved a portion of Daisy Lane, which is a short street extending west from the south end of Darlene Drive to Niles Place. Daisy Lane afforded an adequate means of ingress and egress into the Ziden Subdivision so that it was not necessary for residents thereof to use the private road. There were 25 lots laid out in this subdivision, only two of which abutted laterally on the private road heretofore mentioned. At the time of the final hearing most of these lots had been sold and about 16 houses built thereon.
Before this subdivision was laid out the private road served three families and ordinarily three or four cars would travel thereon each day, although occasionally there would be as many as eight or ten. After the development of Ziden Subdivision many more vehicles used this road, a number of them being large trucks containing machinery, lumber and other supplies for the development of the subdivision and the construction of the buildings thereon. The defendants seriously objected to this increase in traffic. They stopped one truck from coming over the road by blocking it with two cars. They later placed a barrier (wooden horse) on a part of the road near the entrance from Gravois and another near the south boundary of Carleton Izard's lot. These barriers were about seven feet long and upon each of them was placed a sign, "Private Road Keep Out." Similar signs were also placed at the same points on posts by the side of the road. It appears that on two different Sundays Mr. Izard stopped a number of cars that were about to enter the private road and said something to the occupants which caused them to turn around.
These signs and blockades were placed upon the road in March, 1949, and on March 12 the attorney for plaintiffs wrote to the defendants asking them to remove the same and when they failed to do so this suit was filed on March 23. On May 6 of that year the court issued a temporary restraining order and on July 29 after a lengthy hearing the trial court issued a *638 temporary injunction. On June 2, 1950, a hearing was had at which it appeared that the defendants had placed a sign at the side of the road which stated, "Notice. The right to use this road for any destination more than 400 feet south of Gravois Road has been in litigation for more than one year." This sign was electrically lighted so that it could be read at night. The court found this to be a violation of the temporary injunction and each of the defendants was fined, the aggregate amount being $100.
The case was thereafter heard on the merits and on February 13, 1951, the court entered a decree providing for a permanent injunction, the defendants being enjoined from "erecting, placing or maintaining upon, along, or adjacent to the roadway 30 feet in width and 400 feet in length established by John C. Doubek and wife by written instrument dated March 10, 1936, any `blockades' or any `keep out' signs or signs of any nature or obstruction of any nature obstructing, interfering with, or hindering the use by the plaintiffs, their heirs and assigns, of said private road for a private roadway for pedestrian or vehicular traffic between Gravois Road and their respective tracts or parcels of land or any part or portion thereof owned or possessed by them, and being a part of the 5.453 acres described in said written instrument."
This being an equitable action it is our province and duty to review the evidence de novo and to enter such decree as should have been entered upon the evidence, with due deference being accorded the findings of the trial chancellor, especially those depending upon conflicting testimony. Hubert v. Magidson, Mo.Sup., 243 S.W.2d 337; Kessler v. United Agencies, Inc., Mo.App., 243 S.W.2d 779.
The principal issue in this case must be determined by a construction of the written instrument creating the private road 400 feet in length. By this instrument did the Doubeks establish this road for the joint use and benefit of the present and future owners of the property abutting laterally thereon or was it for the use and benefit of all present and future property owners in the entire tract?
It will be noted that the writing (which may at times be referred to as a deed) contained a prefatory statement following the description of the tract to the effect that it is the intention of the parties (Doubeks) to develop said tract and to facilitate such it is necessary to establish a private road through a part of said tract. Then follows the granting clause which describes the private road to be established and concludes with the statement that it is for the, "joint use and benefit of the present and future owners of the property abutting thereon, their heirs and assigns." If the word, "abutting" is construed to refer only to the land that faces on the sidelines of said private road then it is contended that there is a conflict between the two recitals. It is argued that the prefatory statement indicates an intention to establish the road for the use of future owners of the entire tract while the other recital (according to our assumed construction) would limit its use to the owners of the north 400 feet of said tract. We do not entirely agree with this contention as there is nothing to indicate that the Doubeks intended that this private road be the only means of ingress and egress into the entire tract in the event of its development. However, if there is a conflict it would seem that the granting clause would prevail over the prefatory recital. 26 C.J.S., Deeds, § 129(a) page 431.
If we are to conclude that the private road in question was for the benefit of the entire tract then we must hold that all that part which lies south of the north 400 feet (being a tract approximately 255 feet wide by 810 feet in length) abuts upon said road, because 30 feet of its northern boundary touches the end of said road. It seems to be well established in this state that in a legal sense the terms, "abut" or "abutting" do not include property adjoining the end of a roadway, alley or street. Campbell v. City of Glendale, Mo.App., 211 S.W.2d 519; Kingshighway Supply Co. v. Banner Iron Works, 266 Mo. 138, 181 S.W. 30. These cases involve somewhat different factual situations and while we do not consider them absolutely decisive in the instant case they are entitled to considerable *639 weight in determining the meaning of this instrument.
In construing a deed or other similar instrument the rule to be observed is to ascertain the intention of the grantor and to give effect to same unless it conflicts with some positive rule of law. The intention of the grantor is primarily ascertained from the four corners of the instrument. When the language of the deed is ambiguous the court may place itself in the position of the parties when the instrument was executed and give consideration to the surrounding circumstances, including the object to be accomplished, previous agreements which the instrument is to carry into effect, and the state of the law at the date of the deed. Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660, 133 A.L.R. 586; Ott v. Pickard, 361 Mo. 823, 237 S.W.2d 109; Ervin v. Davis, 355 Mo. 951, 199 S.W.2d 366. We have concluded that there is some ambiguity in the language of the Doubek instrument and hence we are justified in considering the surrounding circumstances in ascertaining the intention of the grantors.
At the time this road was created the Doubeks are bound to have known that if the entire tract was subdivided and laid out into lots, this road, being only 400 feet in length, could not provide access to all of such lots. If they had intended to provide a roadway for the development of all of their land it would have been relatively simple, in the instrument in question, to have created a road extending to the southern boundary of the tract.
Furthermore, it should be remembered that on the same day the road was established the Doubeks deeded a tract on the west side of said road, at the southern end thereof, to the Strattmans. The Strattman deed was recorded one minute after the road deed. It is therefore obvious that the sale to the Strattmans and the establishment of the road were both a part of the same transaction. This being true, is it not logical to conclude that the primary object of the Doubeks at the time the private road was established was to provide a roadway for the Strattmans, and upon which could front the tract they were purchasing? We think it significant that the roadway went no further than the southern boundary of the Strattman tract.
If the only means of access to this tract was from Gravois Road we would think it more likely that the Doubeks intended to provide a passageway for the entire tract. Such, however, was not the case. Daisy Lane had been established in 1929, thus creating a means of access into this tract from the west, near the southern end thereof. It therefore appears that in the event of further development a road could be opened connecting with Daisy Lane. This, in fact, was what actually did occur in the fall of 1947.
A consideration of the deed of establishment, the surrounding circumstances, and the law applicable at that time, leads us to the definite conclusion that Dr. and Mrs. Doubek did not intend to establish this private road for the use and benefit of the present and future owners of the entire tract, but only for those owning property abutting laterally on said road.
We further agree with the contention of the defendants that upon the sale of the tract lying south of the end of the private road no easement was created by implication. The law does not favor the creation of easements by implication and such is never implied unless it is reasonably necessary for the beneficial enjoyment of the land. Proof that the easement would be convenient is not enough. Schnider v. M. E. H. Realty Investment Co., 239 Mo.App. 546, 193 S.W.2d 69; Mo. State Oil Co. v. Fuse, 360 Mo. 1022, 232 S.W.2d 501. What we have heretofore said will indicate that there was no necessity for the use of the private road as a means of access to the land in question.
There is no merit to the contention of defendants that plaintiffs are not entitled to relief in equity because they do not come into court with clean hands. This argument is based upon the fact that plaintiffs made certain allegations in their verified petition which later proved to be inaccurate or untrue. It is well known by all who have ever practiced law that attorneys in the preparation of pleadings often *640 make allegations which they are unable to establish in the trial. This may result either from inaccurate information or perhaps from an overzealous sense of advocacy. In this case the erroneous allegation was not sufficiently misleading to justify the imposition of an equitable maxim which would deny plaintiffs any relief.
Next, the defendants argue that the decree cannot stand because it was incomplete and did not dispose of all the issues. They point to plaintiffs' claim for damages and also the counter-claims filed by defendants seeking damages, neither of which were mentioned in the decree. The defendants have evidently overlooked the fact that upon February 9, 1950, the court ordered that their counter-claims be separately tried. This was in accordance with the authority granted in Section 510.180(2) RSMo 1949, V.A.M.S. Under Supreme Court Rule 3.29 the decree herein is final and appealable even though the counterclaims have not been tried. We find no order in the transcript providing for the separate trial of the issue concerning plaintiffs' damages, although it would appear from the remarks of the court and conduct of counsel that all parties thought that had been done. At any rate, if the plaintiffs are not entitled to a separate trial on that issue then it is simply a situation where damages are considered denied. The court could not have allowed any more than nominal damages, as there was no evidence offered as to the amount of damages sustained by plaintiffs. Certainly the defendants cannot complain of the failure of the court to give plaintiffs a judgment against defendants for plaintiffs' damages. This is particularly true since they failed to raise the point in their motion for new trial. This point is ruled against the defendants.
The learned chancellor did not file a memorandum containing his findings of fact or reasons for the decree, but we gather from reading the decree that the court was of the opinion that all persons residing in Ziden Subdivision had an easement to use this private road. This resulted in the decree going too far in that it restrained defendants from maintaining signs of any nature or otherwise interfering with the use of the road by plaintiffs, their heirs and assigns, for traffic between Gravois Road and any land owned or possessed by them in any part of the entire tract.
Even though this is a private road it is our view that it may be used freely and without restriction by the persons owning or in possession of property abutting laterally thereon and by any person who may desire to go to said premises for any lawful purpose. The conduct of defendants in placing barriers and "Keep Out" signs upon or adjoining said road was an improper interference with the legal use of the road by the plaintiffs, and the defendants were properly restrained and enjoined from so doing. It would not have been illegal for the defendants to have posted "Private Road" signs except that in each instance they contained the additional words, "Keep Out."
In view of the construction we have placed upon the instrument creating the private road it is our conclusion that the decree should not have restrained the defendants from taking any reasonable measures to discourage or even prohibit southbound traffic from Gravois Road to points beyond the southern terminus of said 400 foot private road and northbound traffic to Gravois Road originating south of the southern end of the private road. As already indicated, however, these measures must not interfere with the unrestricted use of the private road by those legally entitled to use it.
The motion of respondents to dismiss the appeal or in the alternative to affirm the decree, based upon the alleged failure of appellants to comply with Supreme Court Rule 1.08 is overruled.
The cause is reversed and remanded with directions to the trial court to set aside the decree heretofore rendered and to enter a decree in accordance with the views expressed in this opinion.
BENNICK, P. J., and ANDERSON, J., concur.
LAWRENCE HOLMAN, Judge, Ninth Judicial Circuit, sitting as special judge by transfer order.