CONSOLIDATED AMUSEMENT CO., LTD., a Hawaii corporation, Plaintiff-Appellant, *v.* WAIKIKI BUSINESS PLAZA, INC., a Hawaii corporation, Defendant-Appellee

NO. 10730

(CIVIL NO. 80032)

MAY 28, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In this case involving easement rights, plaintiff Consolidated Amusement Co., Ltd. (Consolidated), the owner of the dominant estate, appeals from an adverse summary judgment in favor of defendant Waikiki Business Plaza, Inc. (Plaza), the owner of the servient estate. The dispositive issue is whether the owner of the servient estate can erect and maintain structures on a portion of an easement for ingress and egress which is of a specified width and length and with definite boundaries, where the structures do not "obstruct" the dominant estate owner's use of the easement.[1] We answer no and reverse.

I.

To facilitate a better understanding of the facts in this case, we include a map as a part of the opinion.[2]

Consolidated is the owner of Lots 2-C-1 and 2-E-1 of Land Court

---

[1] The other issues raised on appeal do not merit discussion.

[2] The map was appended to an agreement dated September 3, 1965, between William Koon Hee Mau and Jean Rachael Mau (collectively Maus), the predecessors in title to Waikiki Business Plaza, Inc. (Plaza), and Consolidated Amusement Co., Ltd. (Consolidated). Because of the reduction in size of the map, the scale of 1" = 50' is not applicable.

Application 551 located in Waikiki.[3] When Pacific Theatres and Supply Company, Limited, Consolidated's predecessor in title, acquired these lots in 1934, the deed (Land Court Document No. 31617) provided that the conveyance was:

TOGETHER with the perpetual right of ingress and egress over the 10-foot strip of land on the Ewa [western] side of [Lots 2-C-1 and 2-E-1], known and designated as Lot 2-B on said Map No. 20, and subject to any prior easements created and existing upon said Lot 2-B.

Consolidated has been operating a movie theater, now known as Waikiki No. 3, on these lots since 1936.[4]

Plaza is the owner of Lot 259 on which stands the multi-story Waikiki Business Plaza building (Plaza Building). The transfer certificate of title which evidences Plaza's ownership provides that Lot 259 is encumbered by Easement "B" which is subject to:

Perpetual right of way in favor of the owners of Lots 2-C-1, 2-E-1, . . . as granted in Document Nos. 31617, . . . .

Easement "B" is a portion of Lot 2-B and was established by Land Court Order No. 22297 filed March 18, 1964, upon the consolidation of Lots 2-B, 117, 146, and 147 and their resubdivision into Lots 257, 258, and 259 and the designation of Easement "B," as shown on Land Court Map 56[5] of Application 551. Ten-foot wide Easement "B" abuts a portion of the west boundary of Consolidated's Lot 2-E-1 from Kalakaua Avenue northward for approximately 216 feet and lies within and adjoins the east boundary of Plaza's Lot 259.

In the course of construction of the Plaza Building, William Koon Hee Mau and Jean Rachael Mau (Maus), Plaza's predecessors in title to Lot 259, and Consolidated executed an agreement dated September 3, 1965 (1965 Agreement). The 1965 Agreement provided, *inter alia,* as

---

[3]All lots involved in this case are Land Court registered land under Hawaii Revised Statutes Chapter 501, the statute establishing the Torrens title system in Hawaii. *See In re Will & Estate of Campbell,* 66 Haw. 354, 662 P.2d 206 (1983).

[4]Consolidated also owns and operates two other movie theaters known as Waikiki No. 1 and No. 2 just north of Lot 259 owned by Plaza.

[5]Land Court Map 56 shows Easement "B" to be 10 feet wide and approximately 216 feet in length. The map referred to in note 2, *supra,* is based on Map 56.

follows:

1. The Maus were permitted to build a sidewalk and curb in the 5-foot wide western portion of Easement "B" (Area 1 on the map) for "pedestrian passageway" use by both parties in conjunction with the Plaza Building.

2. The remaining 5-foot wide eastern portion of Easement "B" (Area 2 on the map), together with a portion of Lot 2-E-1 (Area 3 on the map), were to be used as "a roadway" by both parties.

3. If and when Consolidated ceased using Area 2 for "vehicular roadway purposes," (a) the "right and license" of both parties to use Areas 2 and 3 as a roadway would "cease and terminate," (b) the use of Area 1 as a "pedestrian passageway" would continue, and (c) the "rights and privilege to use Area 2 for pedestrian, but not vehicular, traffic by the parties" would remain unaffected.

Subsequently, from a date undisclosed in the record, Consolidated ceased using Areas 2 and 3 for vehicular traffic.

In June 1971, Plaza entered into a license agreement with Michael Ambler (Ambler), doing business as Taiwan Shop. The agreement permitted the use of the sidewalk area of Easement "B" (Area 1) by Ambler to set up vendors' booths. After Consolidated's objection,[6] in September 1971, Ambler executed a license agreement with Consolidated promising to pay it a monthly fee of $1,000. This arrangement continued until 1982 when Ambler vacated the area because he was delinquent in the payment of the monthly fees to Consolidated and also because the license had expired.

In January 1983, Plaza commenced commercial activities on the sidewalk area of Easement "B." Plaza caused to be placed in the area ten structures, each approximately four feet wide and six feet long, on which merchandise was displayed and sold. Consolidated objected to these activities to no avail.

On October 26, 1983, Consolidated filed a complaint seeking (1) an injunction restraining Plaza "from closing, obstruction [sic], constructing or allowing commercial carts and counters" on Easement "B," (2) special damages, and (3) costs and attorney's fees.

---

[6]Plaza was aware of Consolidated's objection and even sought to negotiate with Consolidated on Michael Ambler's behalf.

 

On May 22, 1985, concluding that Plaza's occupation of "4 feet by 216 feet of the easement by having permanent carts located therein" was "not an obstruction thereof," the lower court granted Plaza's motion for summary judgment. Upon denial of its motion for reconsideration, Consolidated timely appealed.

## II.

A motion for summary judgment should be granted if the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Hawaii Rules of Civil Procedure (1981). *See Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 647 P.2d 713 (1982); *Leary v. Poole,* 5 Haw. App. 596, 705 P.2d 62 (1985).

Here, the material facts set forth above are not in dispute. Neither party disagrees with the lower court's finding that Plaza occupied four feet in width of the 10-foot wide Easement "B" leaving six feet of the easement area unobstructed for ingress and egress by theater goers to Consolidated's theaters.

However, based on the undisputed facts, we conclude that Plaza was not entitled to a judgment as a matter of law.

## A.

Plaza justifies the reduction of the width of Easement "B"'s right of way from ten feet to six feet, by contending that "as owner of the servient tenement, [it] is entitled to make all uses of its land, including commercial uses, which do not unreasonably interefere with Consolidated's easement of ingress and egress." We do not agree.

The general rule is stated in *Aladdin Petroleum Corp. v. Gold Crown Properties, Inc.,* 221 Kan. 579, 561 P.2d 818 (1977), as follows:

[W]here the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. *The expressed terms of the grant or reservation are controlling in such case and considerations of what may be necessary or reasonable to a present use of the dominant estate are not controlling.* If, however, the width, length and location of an easement for ingress and egress are not fixed by the terms of the

grant or reservation the dominant estate is ordinarily entitled to a way of such width, length and location as is sufficient to afford necessary or reasonable ingress and egress.

*Id.* 221 Kan. at 584, 561 P.2d at 822 (emphasis added). *Accord, Andersen v. Edwards,* 625 P.2d 282 (Alaska 1981); *Lindhorst v. Wright,* 616 P.2d 450 (Okla. Ct. App. 1980). *See also* 3 H. Tiffany, *The Laws of Real Property* § 805 (3d ed. 1939). It therefore follows that where the grant or reservation specifies "the way must be of a certain width, no structures can be erected which encroach on the width stated." 28 C.J.S. Easements § 97 at 779 (1941). *See also Aladdin Petroleum Corp., supra.*

Here, the width, length, and location of Easement "B" for ingress and egress were clearly set forth in the Land Court documents and on the pertinent Land Court maps. The description of Easement "B" is definite and "admits of no ambiguity." *Lindhorst v. Wright,* 616 P.2d at 454. Consequently, the terms of the grant of the right of way to Consolidated's predecessor in title control rather than necessity and reasonableness relative to Consolidated's present use of Easement "B."

The 1965 Agreement did not adversely affect Consolidated's right of ingress and egress in Easement "B." The 1965 Agreement was a license, and a license in real property "is an 'authority to do a particular act or series of acts upon another's land without possessing any estate therein.'" *In re Fasi,* 63 Haw. 624, 629 n.8, 634 P.2d 98, 102, n.8 (1981) (quoting *McCandless v. John Ii Estate,* 11 Haw. 777, 789 (1899)). *See also,* 25 Am. Jur. 2d *Easements and Licenses* § 123 (1966). The sidewalk constructed in Area 1 of Easement "B" by the then owners of the servient estate pursuant to the 1965 Agreement in no way diminished the use of the easement area as a right of way for ingress and egress.

Moreover, Consolidated's agreement to permit Plaza's licensee to use a portion of Easement "B" for commercial purposes for a period of approximately eleven years did not result in a partial abandonment of the easement area. The law is clear "that where an easement is created by grant, deed, or reservation no duty of user devolves upon the owner of the dominant estate as a condition of his right to retain and assert his interest therein." *Suzuki v. Garvey,* 39 Haw. 482, 486 (1952). *See also* 25 Am. Jur. 2d *Easements and Licenses* § 105 (1966).

B.

Nonetheless, relying heavily on *Baum v. Glen Park Properties,* 660

S.W.2d 723 (Mo. App. 1983), Plaza insists that it may erect structures within Easement "B" if they do not unreasonably interfere with Consolidated's right of ingress and egress. In *Baum,* the plaintiff sold a portion of her tract of land to the defendant and reserved in the deed "an easement for road purposes over a strip of land forty (40) feet wide lying northwest and adjacent to [a certain] described line." *Id.* 660 S.W.2d at 724. Subsequently, the defendant erected a sign, installed curbing, and planted trees in the easement area. The Missouri Appellate Court held that the defendant "was entitled to erect any structure on the easement as long as that structure did not interfere with the reasonable use by respondent for purposes of ingress and egress to and from her land." *Id.* 660 S.W.2d at 726.

We are not persuaded by the *Baum* opinion[7] and choose to follow the general rule as set forth in *Aladdin Petroleum Corp., supra.*

Plaza's reliance on *Goo v. Young,* 36 Haw. 132 (1942), is misplaced. The issue in *Goo* was whether there was an abandonment of the whole or a portion of an easement of right of way created by a deed or grant. The court did state that the owner of the servient estate may build *over* or *under* the surface of the easement area "if there is no interference with the passageway." *Id.* 36 Haw. at 150. The court made no reference to erection of structures *on* the surface of the easement area.

### III.

We hold that since the right of way over Easement "B" was acquired by grant to Consolidated's predecessor in title and the width, length, and location of the easement were specific and definite in the grant documents, Plaza had no legal right to reduce the width of Easement "B" by any obstruction. Therefore, Plaza was not entitled to a summary judgment as a matter of law.

---

[7]In reaching its conclusion, the appellate court in *Baum v. Glen Park Properties,* 660 S.W.2d 723 (Mo. App. 1983), cited the cases of *Amitin v. Izard,* 252 S.W.2d 635 (Mo. App. 1952), and *Reutner v. Vouga,* 367 S.W.2d 34 (Mo. App. 1963). However, both *Amitin* and *Reuter* do not appear to be cases on point. In *Amitin,* the court construed the instrument creating the "private road" as not benefiting plaintiff's land. *Reutner* basically involved the construction of structures below the surface of the easement area and a temporary obstruction of the surface of the easement area during construction.

It is foreordained that Consolidated will be entitled to a judgment on remand. Consequently, we direct the lower court to enter a summary judgment in Consolidated's favor after determining the appropriate equitable remedy and damages, if any, to be awarded to Consolidated. *See In re Estate of Magoon,* 58 Haw. 345, 569 P.2d 884 (1977); 6-Pt.2 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.27[3] (2d ed. 1985).

Reversed and remanded for further proceedings consistent with this opinion.

*Lloyd Y. Asato (Morio Omori* with him on the briefs) for plaintiff-appellant.

*John T. Komeiji (Jeffrey N. Watanabe* and *Pamela J. Larson* with him on the brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for defendant-appellee.