## GOO LEONG SHEE AND CITY MILL COMPANY, LIMITED, *v.* YOUNG HUNG.

### No. 2478.

Argued May 27, 1942.                    Decided June 19, 1942.

Kemp, C. J., Peters, J., and Circuit Judge Stafford in Place of Le Baron, J., Disqualified.

OPINION OF THE COURT BY KEMP, C. J.

This is an action in ejectment and for damages for wrongful detention brought by Goo Leong Shee and City Mill Company, Limited, against Young Hung. The land involved comprises 799 square feet, a portion of a parcel which comprised 4473 square feet. The larger tract is variously referred to in the conveyances hereinafter mentioned as a 20-foot right of way, a 20-foot roadway, and a lane. The 799 square feet comprise a strip 10 feet wide and approximately 80 feet long, being a portion of the westerly half of said 4473 square feet.

The plaintiffs, by amended complaint filed September 2, 1939, asserted title to said land by virtue of a deed to City Mill Company, Limited, from George W. Gora dated December 5, 1929, and an agreement of sale from City Mill Company, Limited, to Goo Leong Shee dated September 12, 1936. They alleged that the defendant Young Hung, contrary to law and their rights, has taken said land into his possession and converted it to his own use and occupation. They prayed restitution of said property and damages. The defendant answered by general denial. However, at the opening of the trial defendant gave notice that he would rely not only upon paper title to an ease-

ment over the land in question but also upon use of the property as a roadway.

After a trial, jury waived, the circuit judge, after hearing the evidence and viewing the premises, found for the plaintiffs and entered judgment accordingly. The defendant brings the case here on writ of error. The assignments of error set forth:

"That the judgment is contrary to the law, the evidence and the weight of the evidence in that:

"(1)   The Court failed to take into consideration the fact that this was a subdivision with a street in which the Plaintiff in Error was granted a vested right of way which has never been divested;

"(2)   The Court, although recognizing the law to be that the Plaintiff in Error at least acquired a vested interest in the lane opposite his property, extended the rights of the Defendants in Error into the lane beyond the bounds of the property of Plaintiff in Error;

"(3)   That the evidence showed that Plaintiff in Error acquired an easement in addition by user over the premises for a period of more than ten years prior to the filing of the suit and the blocking of the lane;

"(4)   The deeds conveyed property along the 20-foot right of way in question 'for the use of the abutting property owners,' thereby encumbering the entire lane and creating an easement therein for all abutting property owners;

"(5)   The Court failed to consider the fact that Plaintiff in Error used said easement as an outlet from his premises to Kanaina Street;

"(6)   Plaintiff in Error had an implied easement by reason of the fact that his property was bounded on an existing lane."

In his opening brief the defendant says that he relies on all the specifications of error assigned, which he con-

denses into the following statement: "When Percy Pond, in 1912, conveyed the land of which Young Hung's forms a portion, to Eliza Ellsworth, and bounded it along a 20 foot roadway, the fee of which roadway was owned by him, he thereby conveyed to the said Eliza Ellsworth and her successors in title an easement of a right of way along the entire extent of said 20 foot roadway, and both he and his grantees, including the Defendants in Error, are estopped to deny such easement."

The material facts of the case to be deduced from the conveyances can be more easily understood with the aid of the accompanying diagram.

The land within the outer boundaries of the diagram, said to contain 3.83 acres, was owned by J. B. Castle. By two deeds, one in 1905 and the other in 1912, Mr. Castle conveyed all of said land to Percy M. Pond. Pond made various conveyances of portions of said land by which he disposed of all of it. The conveyances to and from Pond are delineated upon the diagram with solid lines and designated by the letters A, B, C and D. The subdivision of the lands conveyed by Pond to different purchasers are delineated with hatched lines. The land in controversy is that portion of lot B included in plaintiffs' lot 7. Defendant owns lot 12, and claims an easement for road purposes over the whole of lot B. The purpose of this suit is to contest defendant's claim of an easement.

On October 12, 1905, J. B. Castle conveyed all of said land except the parcel in the northeast corner of the diagram (lot A on the diagram) containing 17,290 square feet, to P. M. Pond. In his deed to Pond, Castle reserved a 16-foot right of way to Monsarrat Road over the land conveyed from the makai (westerly) side of lot A retained by him.

On May 1, 1912, Pond conveyed to R. Franco 2.75 acres (lot C on the diagram) lying westerly and north-

erly of the right of way reserved by Castle and described the course defining the easterly side of the land conveyed as "223.10 feet along lot B, a 20 foot right of way for the use of the abutting property owners." Lot A, then owned by Castle, abutted upon the easterly side of the 20-foot right of way referred to in the deed of Pond to Franco. The 20-foot right of way is delineated as lot B on the diagram. The right of way reserved by Castle is shown by subsequent conveyances to be the easterly 16 feet of the 20-foot right of way mentioned in the Franco deed. It does not appear from the record that the width of the right of way was increased from 16 to 20 feet prior to the conveyance to Franco. It does appear, however, from the evidence of Frank Ruis, a son of Antone Ruis, who was a successor in title to Franco and a predecessor in title of plaintiffs, that during Ruis's tenure (July 2, 1920, to January 28, 1925), the roadway, 20 feet wide, was defined by fences which were then old, and extended from Monsarrat Avenue back to its northerly terminus in what is now Kaunaoa Street. It also appears from his evidence that Antone Ruis built a house on lot 14, which fronts on Monsarrat Avenue and the roadway (see diagram), and rebuilt the old fence along the westerly side of the roadway; that the witness asked his father, "Why do you want to make it so wide?" To which his father replied: "Agreement was between the property owners before that they had to keep 20-foot right-of-way." It is reasonably clear that the widening of the way was induced either by such an agreement between prior owners of land served by said roadway or by Pond's own desire to have a wider way for the benefit of his remaining land when he sold lot C to Franco.

On December 12, 1912, Castle conveyed to Pond the 17,290 square feet (lot A) not included in his 1905 deed so that at this juncture Pond owned all of lots A and D,

which include all of the land abutting upon the easterly side of lot B. His holding, exclusive of lot B, contained 43,171 square feet. He also owned lot B subject only to such rights as Franco had therein by virtue of Pond's deed of May 1, 1912. Lot B contained 4473 square feet.

On the same day, December 12, 1912, by two deeds Pond disposed of all of his remaining land within the outer bounds of the diagram, including the land within the right of way. By one deed he conveyed to Eliza Jane Ellsworth the 43,171 square feet made up of the two parcels shown on the diagram as lots A and D lying easterly of lot B, the 20-foot right of way, and containing, respectively, 17,290 square feet and 25,881 square feet. He described the land conveyed as one piece by metes and bounds, one course defining the westerly boundary, being "224.22 feet along 20-foot Roadway." By the other deed Pond conveyed lot B to Ellsworth and Franco as tenants in common, the only two persons having lands with any possible appurtenant rights in lot B. He referred to said land in the deed to Ellsworth and Franco as "Section B Roadway" and particularly described it by metes and bounds commensurate with the corresponding boundaries of the two parcels abutting upon said roadway.

Before proceeding to a discussion of the subsequent transactions further subdividing the lands abutting upon said roadway, we shall dispose of the questions raised by the conveyances to and from Pond.

It seems clear that by virtue of the terms of the deed of Pond to Franco conveying lot C, lying westerly of the roadway, an easement appurtenant to lot C was imposed upon said roadway for its entire length and breadth.

"As a general rule, where a conveyance of land calls for a way or street as a boundary and the grantor owns the fee in the land represented as the way or street, he is estopped, as against the grantee, to deny that it is a way

or street; and an easement therein passes to the grantee by implication of law. This easement is not only in that part which adjoins the grantee's own land, but also, by necessary implication, in such portion of the whole way as will make the same available and useful as an appurtenance to the estate granted." 17 Am. Jur., Easements § 46.

It likewise seems clear that if Pond had not conveyed lot B to Ellsworth and Franco, the same rule would apply to his conveyance of lots A and D to Ellsworth.

Plaintiff argues, however, that in the absence of a showing as to which of the two grants made by Pond on December 12, 1912, was first executed, it must be presumed that they were executed simultaneously and that no such showing having been made Pond was not the owner of the servient estate when he conveyed the 43,171 square feet (lots A and D) to Ellsworth and could not therefore have thereby encumbered it with an easement. The argument is based entirely on the fact that the two deeds bear the same date. We think, however, that the assumption that the two deeds were executed at the same time is not conclusive of the question of whether or not the doctrine of implied easement should be applied.

Both reason and authority support the proposition that where an owner who has used a way over one part of his property for the benefit of another part thereof conveys both parts at the same time to different persons, a right to use the way will pass by implication to the purchaser of the part so benefited. (Note, 34 A. L. R. 243, and cases cited.) Lot B had been used as a visible way for the benefit of the land conveyed to Mrs. Ellsworth for years before the conveyance to her. The situation at the time of the sale to Mrs. Ellsworth constituted the operative fact to support the claim of a grant by implication. (*Jones* v. *Bethel,* 20 Ohio App. 442, 152 N. E. 734.) There

are many cases in accord with the above collected in a note in 34 A. L. R. 234.

In 17 Am. Jur., Easements § 39, p. 950, the rule is stated thus: "There is considerable authority for the proposition that the doctrine of implied easement should be applied where an owner of property, one part of which has been subjected to a use for the benefit of another part, sells both parts at the same time to different purchasers, the transaction thereby operating to create an easement corresponding to such use." When Pond conveyed the 43,171 square feet (lots A and D) to Ellsworth, he knew that Castle's first deed to him and his deed to Franco burdened lot B with an easement for road purposes. Moreover, lot B was then in use as a road and was being put to no other use. Pond could not, by a conveyance of lot B, even to a stranger, have relieved the said lot of the existing easement. If we were to give to the conveyance of Pond to Ellsworth and Franco the effect of confining their rights in the way to those incident to a tenancy in common of unencumbered land, then either of them, contrary to the wishes of the other, by a partition suit, could have said land partitioned between them, thus destroying its usefulness as a way. This we cannot believe was the intention of the parties to either of the two simultaneous deeds. "It is apparent that much of necessity depends on the intention of the parties to the instrument in determining whether an easement passes by implied covenant, and this is to be gathered from the nature of the transaction in so far as revealed, the situation of the parties, and the state of the thing granted." *Talbert* v. *Mason*, 136 Iowa 373, 378. We think, therefore, that when Pond conveyed the 43,171 square feet (lots A and D) to Ellsworth, an easement in lot B for its entire length and breadth appurtenant to the land conveyed passed by his grant.

Lots A and D, conveyed by Pond to Eliza Jane Ells-

worth, were by her conveyed to Earl K. Ellsworth on July 31, 1914, by metes and bounds, one course being "224.22 feet along 20 foot Roadway" — habendum, with all the rights, easements and appurtenances.

The deed of Eliza Jane Ellsworth to Earl K. Ellsworth was sufficient and appropriate to pass with her grant the appurtenant easement created by the deed of Pond to her.

On December 27, 1915, Earl K. Ellsworth conveyed to Goo Fong Kee (with all the rights, easements and appurtenances) a portion of said 43,171 square feet said to contain 5244 square feet (lot 12), describing it by metes and bounds, one course being "138 feet along 20 foot Roadway."

On May 22, 1922, Goo Fong Kee conveyed to Young Hung, the defendant herein (with all the rights, easements and appurtenances), the 5244 square feet conveyed to him by Earl K. Ellsworth, and by the same description.

Defendant's rights, based on his claim of an easement in lot B by grant, depend upon the effect to be given to the above two deeds. We shall consider that question after a recital of the conveyances in plaintiffs' chain of title.

That portion of the 43,171 square feet conveyed by Eliza Jane Ellsworth to Earl K. Ellsworth lying northerly of defendant's lot passed to Chun Kim Sut by the following chain of title:

(1)  December 24, 1915, Earl K. Ellsworth to Marion Ellsworth, all of the 43,171 square feet except the portion now owned by Young Hung. This conveyance described the whole 43,171 square feet by metes and bounds, one course being "224.22 feet along 20 Foot Roadway" and the lot now owned by Young Hung was excepted by reference to the Goo Fong Kee deed;

(2)  March 29, 1916, Marion Ellsworth to Matias Salado, 20,080 square feet, a portion of the land conveyed

to the grantor by E. K. Ellsworth, described by metes and bounds, one course defining the westerly boundary being "86.0 feet along Lane." This parcel included all of the present lot 8 except the part of lot B included therein and also included that part of lot A lying northerly of lot 8;

(3) November 10, 1920, Matias Salado and Maria Salado to Antone Ruis and Dolores Ruis, the 20,080 square feet above described and by the same description;

(4) January 28, 1925, Antone Ruis and Dolores Ruis to Chun Kim Sut the 20,080 square feet above described and by the same description. In each of the foregoing deeds the habendum was with all the rights, easements and appurtenances.

The 20,080 square feet described in the above conveyances abut 86 feet upon "Section B Roadway," referred to in the above deeds as a lane, the 86 feet being the most northerly portion of the roadway or lane, part of which is now in Kaunaoa Street.

The 2.75 acres (lot C) passed from Franco to Chun Kim Sut by the following chain of title: May 26, 1919, Franco to Antone P. Soares; July 2, 1920, Soares to Antone Ruis; January 28, 1925, Ruis to Chun Kim Sut.

In all of the above conveyances said 2.75 acres are described by metes and bounds, one course being "223.10 feet along Lot B, a 20 foot right of way for the use of the abutting property owners"—habendum, with all the rights, easements and appurtenances.

The undivided one-half interest in "Section B Roadway," conveyed to Eliza Jane Ellsworth by Percy M. Pond, passed to Chun Kim Sut by the following chain of title: August 31, 1914, Eliza Jane Ellsworth to. William D. Ellsworth; March 29, 1916, William D. Ellsworth to Maria Salado; November 10, 1920, Matias Salado and Maria Salado to Antone Ruis and Dolores Ruis; January 28, 1925, Antone Ruis and Dolores Ruis to Chun Kim Sut.

The record discloses no conveyance by Franco of the undivided one-half interest in "Section B Roadway" conveyed to him by Mr. Pond.

As a result of the conveyances to this point, the land of Chun Kim Sut abutted upon the westerly side and northerly end of said roadway or lane for its entire length and width, and on the easterly side of said roadway or lane for a distance of 86 feet from its northerly terminus. He also owned an undivided one-half interest in fee in the whole of said roadway or lane, the other undivided one-half interest in the fee in said roadway or lane being, so far as the documentary evidence shows, in Rokalio Franco.

With his title in the condition just described, sometime between 1925 and 1927 Chun Kim Sut subdivided his holdings into streets and lots. The hatched lines in the diagram illustrate that part of his subdivision adjacent to the roadway and the disposition which he made of the roadway. They also indicate the location of defendant's lot. The lot numbered 12 is the lot conveyed by Ellsworth to Goo Fong Kee and by him conveyed to the defendant Young Hung. The lot numbered 7, which includes the westerly half of the northerly 80.47 feet of the roadway lying southerly of the new Kaunaoa Street, was conveyed by Chun Kim Sut to John and Lilian Luka on June 24, 1927, and has passed by mesne conveyances from them to the plaintiffs. In the deed of lot 7 to the Lukas said lot is described by metes and bounds. The third and fourth courses which touch the southerly 111.5 feet of the roadway read "along a lane," and plaintiffs concede that said 111.5 feet is a lane 20 feet wide. Lot 8, as laid out and sold by Chun Kim Sut, includes the easterly half of the northerly 80.47 feet of said roadway. The land in controversy is that portion of the roadway included in lot 7.

Having concluded that the conveyance of lots A and D by Pond to Ellsworth created an easement in lot B appur-

tenant to the land conveyed, which passed by the conveyance of Ellsworth to Ellsworth, we must now determine what rights in lot B passed to the defendant by virtue of the conveyance by Ellsworth to Goo Fong Kee and the conveyance by Goo Fong Kee to the defendant of only a portion of the dominant estate. The specific question is, did an easement in the whole of lot B pass by said conveyances, and if not, to what extent did they pass an easement in said lot?

The court stated its conclusion thus: "The Court cannot find in the conveyances to the defendant or to his predecessors in title, any direct grant of a precise easement in and over 'Lot B' nor any reason to assume, from the conveyancing or from the dairy period of use, the existence of an easement from defendant's boundary running in the northerly direction beyond defendant's lot unless the same arose by prescription after the creation of the new road by the subdivision thru' Chun Kim Sut's creating Kaunaoa Street."

Plaintiffs, in their brief, concede that the defendant has the right to use the full twenty feet of the roadway abutting his property. His property is bounded by the roadway for 138 feet. The judgment, however, deprives him of the use of one-half of the width of a portion of the roadway upon which his lot abuts. More specifically, the effect of the judgment is to reduce the width of the roadway to 10 feet for all but 111.5 feet of the 138 feet that his lot abuts upon said way. By conceding that defendant has the right to use the full 20 feet of the roadway "abutting his property," plaintiffs apparently concede that the judgment is erroneous to the extent that it deprives him of that right.

We agree with defendant that, under the facts already recited, he acquired an easement in lot B for the full 20 feet in width and at least for the full 138 feet that his lot

abuts upon the roadway. The word "appurtenances," although insufficient to evidence a purpose to create an easement when none previously existed, is properly used to evidence an intent to convey an already existing easement. (17 Am. Jur., Easements § 40, p. 950.) All of the conveyances in defendant's chain of title from Pond down to himself comply with the principle stated and were sufficient in substance to pass the then existing easement, at least to the extent now under consideration.

The circuit judge seems to have overlooked the fact that the suit involved part of the southerly 138 feet of the way. In his decision he said: "So that under this conveyance from Ruis to Chun Kim Sut, there passed into a common ownership all the right, title and interest of Lot B with the exception of what *pertained* as right or easement to the Young Hung premises which fronted on Monsarrat Avenue and abutted on the southeast line of this right-of-way for 138 ft., (no issue in this case concerns this part of the 'right of way')." The conclusion of the circuit judge that Chun Kim Sut, by the deed of Ruis to him, acquired all the right, title and interest in lot B, except as stated, is also erroneous. Ruis, by his deed to Chun Kim Sut, conveyed only the undivided one-half interest in the fee which Pond conveyed to Ellsworth. This error may have been induced by a rather ambiguous statement of a stipulation as to plaintiffs' title. At the opening of the trial counsel for plaintiffs stated to the court that "it has been stipulated that Goo Leong Shee has title, and no claim of title is made by defendant in this matter to the piece in question." To this statement counsel for defendant replied: "That is modified just a little; the abstract there shows a chain of title." The court then elicited the information from counsel that the chain of title referred to was of plaintiffs' title as a part of lot 7. After some further discussion by court and counsel as to the location

and dimensions of the land in question, the court said: "And the paper title is conceded to be in the plaintiff. What other stipulations?" To which counsel for plaintiffs replied: "That is all," but counsel for defendant made no reply. Unless the failure of counsel for defendant to reply to the statement of the court to the effect that the paper title is conceded to be in the plaintiff amounted to a withdrawal of his former statement modifying what counsel for the plaintiffs stated had been stipulated with reference to title, then plaintiffs' paper title was not conceded.

However, counsel for defendant has not assigned the finding of title as error. We are not, therefore, at liberty to consider it. We have discussed it for the reason that other errors will require a reversal for a new trial and the issue of title, if material, might then be well-raised and the error repeated.

When, in 1912, the easement in lot B was created, the parties must have anticipated that the Ellsworth property would not always remain in its then condition but might be subdivided and improved so as to increase the use of the way. (*Seidler* v. *Waln,* 266 Pa. 361, 109 Atl. 643, 8 A. L. R. 1363, 1367; 9 R. C. L. 803.)

In *Phoenix Nat. Bank* v. *United States Security Trust Co.,* 100 Conn. 622, 124 Atl. 540, 34 A. L. R. 963, 969, it is said that the rule governing the rights of the purchaser of only a portion of the dominant estate is well-established and quotes the rule from the leading case of *Hills* v. *Miller,* 3 Paige 254, 24 Am. Dec. 218, 220, as follows: "As the right is annexed to the estate, for the benefit of which the easement or servitude is created, the right is not destroyed by a division of the estate to which it is appurtenant. And the owner or assignee of any portion of that estate may claim the right, so far as it is applicable to his part of the property, provided the right can be enjoyed as to the

separate parcels without any additional charge or burden
to the proprietor of the servient tenement."

19 C. J. 948 states the rule in almost the same words
and explains and expands the expression "so far as it is
applicable to his part of the property" by adding "and it
inures to the benefit of the owners of all subdivisions so
situated that it can be used."

The same rule is discussed in 17 Am. Jur., Easements
§ 126, p. 1014, where it is said: "An appurtenant ease-
ment exists for the benefit of the dominant tenement as
an entirety, and not solely for any particular part thereof.
The law will not presume that either party at the time of
the grant of the easement was ignorant that the grantee
had a right to alien a part of his lands, or that it was the
intention, unless clearly expressed, that by such aliena-
tion the easement should be extinguished. Accordingly,
if the dominant estate is divided, the right is not de-
stroyed. The owner or assignee of any portion of that
estate may claim the easement so far as it is applicable
to his part of the property, provided the easement can be
enjoyed as to the separate parcels without any additional
burden upon the servient tenement. Thus, where there
is an easement of way appurtenant to a tenement, the
subsequent grantee of a part of such tenement has the
right to use the way as appurtenant to his particular part
of the land. The rule applies whether the division is ef-
fected by grant, descent, devise, or partition by court pro-
ceedings. On the other hand, the division of a tenement
to which an easement of way is appurtenant does not re-
sult in giving each grantee a separate way over the servi-
ent tract. The grantee acquires no rights in the servient
tenement except in the easement as located at the time
the dominant tenement is subdivided. According to some
courts, upon the division of a tract to which an easement
of way is appurtenant, one acquiring a portion thereof

may have the benefit of the easement notwithstanding his portion does not abut upon the way. Other courts maintain, however, that if an easement is clearly not appurtenant to a portion of land, following a division of dominant land, the owner of such portion cannot claim a right to use the easement. Thus, where land to which a right of way is appurtenant is divided so that a part of the land is separated from the way by other land and no right has been given to cross the intermediate land, it has been held that the grantee has no title to the easement. In other words, in order that the purchaser of a parcel of an estate shall have the right to use an easement of way appurtenant to the estate in its entirety, it must appear that the way is directly adjacent to his tract or that he has a legal means of reaching such way over other lands."

Applying the rule announced by the authorities, we conclude that the defendant, by the purchase of a portion of the dominant estate, acquired the right to the use of the whole way as it existed at the time of the separation of defendant's lot from the remainder of the dominant estate.

We have yet to consider the argument of plaintiffs that any easement that may have existed in favor of defendant or his predecessors in title has been extinguished by abandonment.

The gist of the argument is that abandonment is established by a showing that the defendant and his predecessors in title have permitted the predecessors in title of the plaintiffs to obstruct the claimed roadway so as to make it impossible for the defendant to use the claimed roadway for longer than the prescriptive period.

The cases are agreed that at least where a right of way is created by grant, deed, or reservation, no duty is thereby cast upon the owner of the dominant estate to make use thereof as a condition to the right to retain his interest therein, and that mere nonuser, even for the prescrip-

tive period, will not extinguish an easement created by grant, deed, or reservation. (17 Am. Jur., Easements § 141, p. 1026.) This is not to say that an easement created by grant or deed cannot be extinguished by abandonment but there is reputable authority for the proposition that all the elements of an equitable estoppel must exist to establish the abandonment of such an easement. Furthermore, an easement may be abandoned in whole or only in part. The intention to abandon is the material question and may be proved by an infinite variety of acts. It is a question of fact to be ascertained from all the surrounding circumstances, such as permitting it to be closed for a long period of time, during which the owner of the servient estate spends large sums of money in its improvement. The acts claimed to constitute the abandonment must show a destruction of the easement, impossibility of its legitimate use resulting from some act of the easement owner or his acquiescence in acts of others inconsistent with a future enjoyment of the easement. The burden of proving abandonment is upon the party alleging it and must be established by clear and unequivocal evidence of decisive and conclusive acts. (17 Am. Jur., Easements § 142, pp. 1026-1028.)

"If the servient owner erects a building with knowledge that the dominant owner claims an easement, the enjoyment of which it obstructs, he cannot assert an abandonment of the easement by the dominant owner's failure to complain. According to some authorities, the servient owner is bound to take cognizance of rights of the dominant owner, which are a matter of record open to the knowledge of both owners. Mere neglect of the dominant owner to bring an appropriate action to remove the obstruction is not in itself evidence of abandonment." (17 Am. Jur., Easements § 143, p. 1029.)

The owner of the servient estate may subject it to

various uses without prejudice to the rights of the owner of the dominant estate and without imposing upon the owner of the dominant estate the duty of affirmative action to negative an intention to abandon his easement. In 17 Am. Jur., Easements § 117, p. 1009, the rights and duties of the respective owners are discussed, where it is said: "It is a general rule that a grant of an easement of a right of way does not, by implication, include the right to have that way kept open to the sky for light and air, and that the grant is not interfered with by building over the way, provided there is no interference with the reasonable use of the easement as a passageway. Subject to the easement, the landowner's control extends indefinitely upward and downward from the surface. Accordingly, it has been held that the owner of the fee may erect across a way an open iron bridge which does not interfere with passage over the surface or he may entirely cover the passageway with a building if he leaves a space so high, wide, and light that the way continues substantially as convenient as before for the purpose for which it was created. Moreover, the owner of a servient tenement may lawfully excavate under the surface of an alley or other easement of passage if there is no interference with the passageway. Owners of easements of way have in many instances been held to have no just cause of complaint from the fact that a part of a building extends over the driveway or alley in which the easement exists. For example, it has been held that the owner of the fee will not be enjoined from extending a projection from his building partially across the way in which an easement exists if it will not interfere with any use which the owner of the easement can reasonably be expected to have occasion to make thereof."

Having held that the defendant acquired no easement by grant or deed, the court did not pass upon the question of abandonment of an existing easement by permitting it

to be obstructed but did pass upon the claim of defendant to an easement by user and in so doing made findings of fact as to the obstructions existing in the way deemed sufficient to defeat defendant's claim. These are the obstructions upon which plaintiffs rely to show abandonment. The obstructions in the way found by the court to constitute an interruption of the use sufficient to prevent the acquisition of a prescriptive easement by the defendant consist of the following: a garage, which projects between three and four feet into the roadway (this garage was erected in about 1926 and the record fails to show that the defendant, who owned and lived upon his lot since 1922, at any time protested either the erection or the maintaining of this partial obstruction of the way); another garage which likewise projects about the same distance into the way (this garage was erected by the present owner subsequent to her purchase in 1936 and neither its erection nor maintenance was shown to have been protested by the defendant; in fact, the record fails to disclose any attempt by the defendant to prevent or abate the partial obstruction of the way by either of said two structures); the erection of a street curb on Kaunaoa Street ten feet from the property line, which was lowered opposite the east one-half only of the 20-foot roadway; the planting by the shade tree commission of an African tulip tree in the outer edge of the sidewalk area opposite the end of said 10-foot strip; and the existence of an old kiawe tree growing in the way about 20 feet south of Kaunaoa Street and in approximately the center of the 20-foot roadway. The court found from conflicting evidence and a view of the premises that no fence had ever been maintained south of the kiawe tree and made no finding as to when a fence was first erected in the way. It does not appear from the evidence that anyone planted the kiawe tree. It is apparently a wild growth that no one took the trouble to

remove. As already stated, the tulip tree was planted by the shade tree commission and the evidence indicates that it was planted sometime between 1929 and 1931. The uncontroverted evidence shows that when the present owners of lots 7 and 8 erected fences in the way, one in 1936 and the other in 1937, the defendant promptly demolished them. His conduct in this regard clearly negatives an intention on his part to abandon the whole of the claimed easement. The defendant admits, however, that he is not entitled to have the garage built in 1926 removed but insists that he is not estopped from insisting upon the removal of the one erected years later. The issue of a partial abandonment of an existing easement, if raised at the trial, was not passed upon by the court. It is not clear that the issue of abandonment, in whole or in part, was raised at the trial; certain it is that the court did not pass upon it. We have stated the principles of law applicable to the issue to be applied upon further proceedings if the parties elect to present it.

The way as it existed at the time defendant acquired a right of easement therein ended in a *cul-de-sac* about eight feet short of the north line of the present Kaunaöa Street. This, however, did not prevent him from acquiring an easement therein. (*Petitpierre* v. *Maguire,* 100 Pac. 690, 693.) The Kaunaoa Street curb is ten feet north of plaintiffs' property line and, even if it had been so constructed as to entirely prevent access to said street from the roadway, its only effect would have been to bring the *cul-de-sac* a few feet closer to defendant's lot.

The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

*F. Schnack* (also on the briefs) for defendants, plaintiff in error.

*C. A. Gregory* (Smith, Wild, Beebe & Cades on the brief) for plaintiffs, defendants in error.