CITY AND COUNTY OF HONOLULU *v.* TAM SEE.

NO. 2930.

ARGUED SEPTEMBER 18, 1953.          DECIDED OCTOBER 12, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.
(Le Baron, J., dissenting.)

A proceeding was instituted by the plaintiff-defendant in error on August 10, 1943, to condemn parcel 10, among other lands, in Manoa valley in Honolulu for park and playground purposes. There was no immediate taking of possession but on the 15th day of July, 1947, pursuant to a motion duly filed, an order issued putting plaintiff in possession.

The case came on for hearing before the circuit judge on April 5, 1948, to determine what compensation, if any, Tam See was entitled to as compensation for the taking of said parcel 10 under the proceedings theretofore instituted. At the hearing it appeared that the parcel would

be used for road purposes as an entrance to the park; the judge held plaintiff in error, who was the owner of parcel 10 of the land sought to be condemned, was entitled to no compensation because the benefits of a public road to the adjoining lands of petitioner offset the value of the parcel taken.

On the writ of error (*City and County* v. *Tam See*, 38 Haw. 592) this court reversed the order of condemnation on the ground that the resolution of the board of supervisors authorizing the condemnation was for "park and playground purposes" and that the judgment and final order of condemnation were not based on the facts alleged in the petition and in the resolution of the board of supervisors but on the ground that the land was to be taken for a "public highway," and thus the judge in declaring the public use and purpose to be a "public road" went beyond the scope of the pleadings and the jurisdiction of the trial court. The court also stated: "* * * The petitioner could not amend the pleading to conform to the proof by alleging that the use and purpose for which the land was being condemned were for use as a public road. That would not be within the terms of the resolution of the board of supervisors authorizing condemnation. Also the judgment and final order of condemnation are based on facts proved and found but not averred."

After the case was remanded to the circuit court it appears that some negotiations were carried on between the parties. However, the matter remained practically dormant until July, 1952, when the defendant, Tam See, filed a motion for an order to show cause why she should not receive $10,047.06 by reason of the bringing of the action and the possession of said parcel by plaintiff.

In the meantime Tam See, by deed dated April 25, 1946, duly recorded on the 2d day of May, 1946, in liber 1953, pages 255-258, in the bureau of conveyances, pur-

ported to convey other adjacent portions of her lands to the Star Market, Limited.

In the City and County's return to the order to show cause it contended that by the said deed of Tam See to the Star Market, Limited, dated April 25, 1946, an easement was granted in favor of the grantee and that because of such easement Tam See was entitled to no compensatory damages from the date of the recording of said deed of May 2, 1946, to the abandonment of this proceeding by the filing of a new and distinct petition for the acquisition of parcel 10 as a roadway.

We held in *Territory* v. *Ala Moana Gardens, et als.*, 39 Haw. 514, that an owner is entitled to compensation for land taken subject to such impediments on his ownership as he had created which, in that case, was an easement for street purposes which caused his ownership to be practically worthless.

The deed in this case to the Star Market, Limited, conveyed two parcels of land. The description of each is expressed in azimuths and distances definitely delineating the granted parcels and areas thereof. However, in one course in one parcel or lot, after setting forth the azimuth and distance, it indicates the coincident of a course as "along the southwest side of 40-foot roadway." Again, in the other lot, a similar reference is made to the northeast side of a "40-foot roadway."

On the trial the court held: "* * * Defendant, having referred to a 40-foot roadway in her deed to Star Market, Limited, and thereby having represented to Star Market, Limited, the existence of the 40-foot roadway, will not be allowed to deny to Star Market, Limited, or its grantees the existence of the 40-foot roadway or its availability for use by Star Market, Limited, or its grantees. Whether Defendant is bound by covenant or by estoppel, the result is the same. Star Market, Limited, has easements over

Parcel 10 for roadway purposes."

We held in *Re Land Title, Yamaguchi*, 39 Haw. 608, that where an owner sold lots based on a land court subdivision map there was created an easement in favor of the purchasers to any roadways so laid out upon the map; that "Where lots are sold bounded by roadways whether designated as such or designated by implication with reference to a land court subdivision map, a dedication occurs to the use of the purchasers and to the public of the roadways so created."

In the present case the so-called road was not laid out by the grantor as a street; quite the contrary. The description was taken from the tax map whereon the street was delineated apparently to comply with the condemnation proceedings then pending.

"The rule that a conveyance of land as bounded on a way carries with it an easement in the way is predicated on an inference as to the parties' intention and will not be applied where the circumstances indicate that the inference is not justified." (28 C. J. S., Easements, § 40, pp. 705, 706.)

"Whether the * * * parcel (now constituting lots number 39, number 40, number 41, and number 42 as subdivided) was in fact *intended* as a 'roadway,' * * * is determinative of the question. * * *" (Emphasis added.) (*Re Land Title, Yamaguchi, supra,* pp. 610, 611.)

"* * * Merely bounding premises by a public highway for purposes of description, and where it is referred to as any fixed mark or monument might be, is very different from selling by reference to a map or plat on which the grantor has laid out streets and made a dedication and exposed himself to the equities of an estoppel * * *." (*King et al.* v. *Mayor, Etc., of N. Y. et al.,* 102 N. Y. 171, 175, 6 N. E. 395.)

The easement may exist because of the intent of the

parties or by way of estoppel. In the present case clearly it was not the intent of the grantor or the grantee that the grantor convey a right of way as set forth in the condemnation proceedings. The boundaries are delineated and the roadway is apparently set out for descriptive purposes only, which is a very different situation from selling by reference to a map or plat on which the grantor has laid out streets and made a dedication and exposed himself to the equities of an estoppel.

The circumstances of the case, as well as the particular language used, may be referred to for the purpose of showing that there was no intention in bounding the land on a non-existent street or way to give an easement in the land retained. In the present case not only did the purchaser know of the pending condemnation proceeding but the grantor attempted to induce the purchaser to buy the lot constituting the so-called road. This the grantee refused to do on the ground that he did not wish to buy a law suit particularly as, according to the grantee's statement, the City and County was very parsimonious in paying for lands condemned for road purposes. There can be no estoppel by representation as the purchaser had been expressly told that lot 10 was not a street but merely a parcel under condemnation proceedings by the City and County of Honolulu for a street.

"* * * So far as estoppel by representation is concerned, the fact that the conveyance bounds the land by a street is immaterial if the purchaser has been expressly told, or has reason to believe, that no such street exists." (Tiffany, *Real Property,* 3d ed., vol. 3, § 799, p. 309.) This description of land conveyed (as bounded on an unopened street) may be some evidence of an intent to dedicate the land. Though an owner may testify as to his actual intent, his testimony will be considered in connection with all the other facts and circumstances and such testimony

would not prevail against unequivocal action or conduct on his part inconsistent with such intent upon which the public has the right to rely. (Jones, *Easements,* § 233, p. 194; § 427, p. 339; § 432, p. 344.)

However, there are authorities that a conveyance purporting to bound land by a street creates an easement in the grantee without reference to whether the grantee had been induced to believe a street actually existed. This goes on the theory that such conveyance bounding land on a nonexisting street is "presumed to be intended" to vest in the grantee an easement of passage and of light and air similar to those which he would have acquired had the street actually existed. (Whether this presumption is rebuttable is seldom discussed but these decisions seem to go on the ground that an estoppel is created or a covenant is implied.) (Tiffany, *Real Property,* 3d ed., vol. 3, § 799, p. 309.)

The fact that the only parties to the instrument or those in privy thereto can invoke an estoppel arising out of the deed or a covenant therein need not be discussed as there appears neither estoppel nor covenant nor intent of the parties to dedicate or convey a roadway. (19 Am. Jur., Estoppel, § 6, pp. 603, 604.)

The trial court, in fixing the amount of the compensation to which Tam See was entitled at the date of the recording on May 2, 1946, of her deed, also committed error in not allowing interest from the date of the taking. The rule of just compensation requires that the payment be made simultaneously with the taking of the property. If this cannot be done, just compensation requires interest on such damages from the taking to the time the actual payment is made. After the owner ceases to have the use of the land, he is entitled to its value; if payment is delayed, just compensation requires that he be paid the value

of the use of the money withheld from him, that is, interest at the legal rate.

Judgment reversed.

*A. K. Trask* (also on the briefs) for plaintiff in error.

*C. Y. Taniguchi,* Deputy City and County Attorney (*J. M. Morita,* City and County Attorney, with him on the brief), for defendant in error.

DISSENTING OPINION OF LE BARON, J.

I respectfully dissent. The majority opinion from my study of the case rests upon a failure to properly evaluate the facts and gives the appearance of misapplying the settled law of this Territory as well as that of all the other jurisdictions of the United States. Such an underlying fallacy, as I see it, permeates the opinion from beginning to end and makes it incumbent upon me to dissent to that opinion in its entirety. My reasons for dissent, therefore, can best be expressed by setting forth the facts and the law in the form of an opinion, which, to the extent of its substance, I believe, should have been the majority, if not the unanimous, opinion of this court. At the risk of tediousness the facts are detailed more than would be ordinarily necessary in an appellate decision. The law, however, will be succinctly stated. I take this method of dissent in the hope that it may serve as a useful critique and as a basis for judicial application of the law on reconsideration of any of the questions apparently decided by the majority.

This is an action in eminent domain brought by the City and County of Honolulu against the defendant to condemn a narrow strip of her land carved out of a larger tract belonging to her. The City sought to condemn that strip for the public use of a park road or access road from East Manoa Road to a park and playground. The action

was filed on August 10, 1943, and served December 23, 1943, upon the defendant who answered by general denial but admitted ownership to "the premises described." On April 25, 1946, the defendant sold to the Star Market, Limited, the portions of her tract not sought to be condemned and in the deed referred to the condemned portion as a "40-foot roadway," along the sides of which it bounded the conveyed portions. On May 2, 1946, that deed was recorded and more than one year later, on July 15, 1947, the City moved for and obtained an order putting it in possession of the land sought to be condemned as a park road "with the right to do such work thereon as may be required for the purpose for which the taking [thereof] is sought." On April 5 and 6, 1948, the cause was tried on its merits, the primary issue litigated being that of compensation. But that issue was litigated by the parties pursuant to the provisions of section 314 of the Revised Laws of Hawaii 1945 as amended by Act 200, Session Laws 1947, with respect to the value of the portion sought to be condemned in addition to any severance damages, or as offset by any improvement benefit, to the portions of the tract not sought to be condemned. In doing so, the parties confined the proof to the date of summons when the defendant owned the entire tract of land and before she had sold the portions not sought to be condemned. On that proof, the trial judge [the late Judge Cristy] by written decision found, after he had "listened to the so-called experts on both sides" of the case, that the purchase price obtained by the defendant from her grantee for the sale of the two lots conveyed along the "40-foot roadway," as designated by the deed, represents a value per square foot which is "more than two or three times the value of what most optimistically could have been fixed as the value per square foot on the date of summons." Accordingly, he found not only that there were no severance dam-

ages but that there was an improvement benefit to the portions of defendant's land not sought to be condemned and that such benefit "far exceeds the value" of the portion sought to be condemned. Pursuant thereto judgment was entered awarding the defendant "no compensation" as provided by statute. (Sec. 314, *supra*.) From that judgment and an order of condemnation vesting title in the City, the defendant sued out a writ of error. After argument on the merits, this court discovered a variance to which no objection had been made below and which was not specifically raised on appeal but was deemed to be "sufficiently related to [an] alleged error to justify its consideration * * *." (*City and County of Honolulu* v. *Tam See*, 38 Haw. 592, 598.) The variance concerns the character of public use. It lies between pleadings as to one type of public road, *i.e.*, a road within the "park and playground purposes" as averred by the petition and as recited by the resolution authorizing the condemnation, and proof as to another, *i.e.*, a road within the municipal system of streets as assumed by the testimony of witnesses for both parties at the trial. As a general rule, variance cannot be so raised for the first time on appeal but this court invoked the "well-settled exception * * * that the general rule has no application where the objection could not have been obviated below by amendment of the pleadings or when the judgment is based upon facts found or proved but not averred." (*City and County of Honolulu* v. *Tam See, supra*.) Finding that the variance as to the character of public use fell within that exception, this court without passing on the merits reversed the judgment and final order of compensation and remanded the cause "for further proceedings not inconsistent with [its] opinion." (*City and County of Honolulu* v. *Tam See, supra*.) Consonant therewith, the City on remand did not attempt to amend its petition to meet the proof as to public use

but ultimately on July 30, 1952, abandoned its action to condemn for a park road by filing a new action to condemn for a public street in conformity with that proof. Thereupon, the defendant moved in the instant (old) action for an order to show cause why the City should not pay damages as rent for the use of her 40-foot strip of land from August 10, 1943, when that action was filed, to July 30, 1952, when it was abandoned. The City by return countered that the defendant's deed, by conveying all her land bounded on both sides of the designated "40-foot roadway" for its entire length, created an easement which so encumbered that roadway that she was only entitled to nominal damages for the use of it by the City after the deed became effective. Thus the issues of rent damages and easement were framed and for the first time the deed was introduced into evidence. After extensive hearing thereon, the trial judge by written decision resolved those issues against the defendant by granting actual damages as rent before the deed and nominal damages thereafter. From a judgment awarding such damages the defendant sues out the instant writ of error and the cause is before this court for the second time.

The sole question presented by the defendant's specification of the alleged errors upon which she relies for a reversal is whether her warranty deed in conveying the two portions of her tract divided by and bounded along the central narrow strip of her tract creates in her grantee an easement for road purposes over that strip to which the deed refers as a roadway and which the City at the time was seeking to condemn for that purpose. If it does, then her damages to the use of that central strip after the effective date of the deed would be nominal because her naked fee thereto would be encumbered by such easement. If it does not, then her damages would be actual for the entire period of pendency before the action was abandoned be-

cause her fee would not be so encumbered. That question is one of intention requiring the deed to be interpreted.

The cardinal rule for the interpretation of deeds and other written instruments is the expressed intention of the parties gathered from all parts of the instrument giving each word its due force and read in the light of existing conditions and circumstances. It is the intention effectually expressed, not merely surmised or secretly held. This rule controls all others. It has only to be applied to ascertain the expressed intention of the parties toward the boundaries of the conveyed parcels on the intervening roadway.

The material facts are not in dispute. They can be more easily understood, however, with the aid of the diagram on the following page. The defendant's tract of land, before condemnation, was unimproved. It is a rectangular piece of land fronting on the northwestern side of East Manoa Road for more than 200 feet and extending northwesterly for a distance varying between 320 to 330 feet where its boundary is the middle of East Manoa stream. It is situated opposite to Kahaloa Drive. As an extension of that public street through the approximate middle of that tract, the narrow central strip of land, or lot B, sought to be condemned as a park road, trisects by its sides the entire tract into lots A, B and C as designated on the diagram. Lots A and C are wider rectangular strips along either side of lot B. Those three adjoining strips or lots constitute the trisected tract. Lot B is 40 feet wide, except where its sides curve outwardly to join East Manoa Road. It is approximately one half of the width of each of the other two lots, between which it is sandwiched, and is of equal width with Kahaloa Drive. Consistent with the purpose of condemnation, lot B as already indicated joins East Manoa Road from the northwest in the same manner as does Kahaloa Drive from the southeast and at

Public Park

School Area

Manoa    Stream

A B C

EAST    MANOA    ROAD

KAHALOA DRIVE

TRUE NORTH
Scale: 1 in. = 100 ft.

A = Lot conveyed
B = '40 Foot Roadway'
C = Other lot conveyed

A + B + C = DEFENDANT'S TRACT

the intersection connects those public streets to a park and school area to the northwest.

Since February 4, 1943, the official map of the City, recorded in the department of public works, bureau of plans, has shown the above described subdivision of the defendant's tract. In addition that map delineates the lot boundaries and gives the area for each of the three lots. Moreover, it sets forth azimuths and distances to designate the courses and to measure the boundaries for each lot. Of greater significance, it gives coordinates, curve data and other information of survey controlling those boundaries. A copy of that map of subdivision with such information appearing on its face was attached to the City's petition to condemn lot B for a road and that petition describes that lot in accordance with such map. Service thereof was made by summons upon the defendant on December 23, 1943. In April, 1946, she commenced negotiations with the Star Market, Limited, for the sale of lots A and C. During those negotiations the parties viewed the subdivision on the ground. They had actual knowledge of map, petition and character of the subdivision involved as well as constructive knowledge of the existence of a part of the City's master plan showing the same subdivision as adopted by the city planning commission after a public hearing pursuant to public statute (S. L. 1939, Act 242, pt. of § 4 (69) as am. by S. L. 1941, Act 323, § 1 and S. L. 1943, Act 148, § 1) and as "ratified, confirmed and validated" by public statute on April 27, 1943, more than three months before the date of filing the instant action of eminent domain and more than three years before the date of sale. (S. L. 1943, Act 63.) Superimposed upon such actual and constructive knowledge is their firsthand knowledge that the proposed road is a part of a public-improvement project to open up a neighboring public park and school area to the public. Presumptively

they were well aware of the obvious benefits to be derived from the construction of that road as proposed by the City not only because it subdivides the tract into two lots at no expense to the defendant but because it connects the front public road to the rear public park and school area. That the parties arrived at a higher purchase price to absorb those benefits than otherwise would have been the case had they not existed may be reasonably inferred, if not taken as a fact as found to be the case at the original trial on the merits, there being nothing to controvert that fact in the record. In correlation, the Star Market, Limited, through its representative refused the plaintiff's offer to sell the roadway under condemnation at the same value per square foot for which it had to pay for the lots abutting upon that roadway, presumably because such roadway then had only a nominal value. Consistent with that presumption, the grantee through its representative expressed distaste toward being involved in the pending law suit to obtain from the City more than the nominal value of such roadway and further expressed its opinion that the City would be "very parsimonious in paying for lands condemned for road purposes." The plaintiff then abandoned her attempt to sell the entire subdivision to the grantee, concentrated on the benefits to be derived from the roadway under condemnation by the purchaser of the abutting lots and sold only those lots, one of her witnesses testifying that those benefits were discussed in the negotiations held on the property itself as an inducing feature of sale "for purposes of investment." Culminating such negotiations, the Star Market, Limited, as prospective grantee, had the deed prepared. Significantly, the deed, so prepared, employs substantially the same language to bound the conveyed lots on East Manoa Road as that used by it to bound them on the central roadway under condemnation and thereby treats both roads consistent with

a concept of existing easements over them. The deed describes the southeastern boundaries of both lots "along the northwest side of East Manoa Road." It describes the northeast boundary of one lot "along the southwest side of 40-foot roadway" and the southwest boundary of the other "along the northeast side" of the same dividing roadway. When read in the light of the attending circumstances of sale and interpreted with reference to the deed's habendum clause "To have and to hold the granted premises, together with all * * * the rights, easements, privileges and appurtenances thereunto belonging or appertaining," the language of the deed, so bounding the lots located at opposite corners of the intersected public street and dividing roadway, gives rise to an implication that the deed in employing that language intended to confer upon the grantee, as sole abutting owner of the granted premises appurtenant to that roadway on both sides for its entire length, the right to use it for road purposes corresponding to those for which the grantee has a right to use the public street. It is a fair inference therefrom that the rights of use as to both street and roadway formed parts of the consideration moving to the grantee for its purchase and became appurtenant to the granted premises on execution of the deed. Nor is there anything in the deed or attending circumstances to negative either that implication or that inference. On the contrary, they are consistent with the theory of trial on the merits by both parties and become stronger the more the facts are scrutinized and the finer they are detailed.

The common source of description for deed and petition is the official map, recorded in bureau of plans showing the subdivision of defendant's tract, in accordance with which not only is the description of road by the petition but are the descriptions of lots on either side of that road by the deed. That underlying map with respect to the deed is comparable to "the reservoir of official sur-

veys and maps" which this court characterized as "the determinative source" of description for a royal patent. (*Re Land Court App'n of R. W. Meyer, Ltd.*, 39 Haw. 403, 410.) This is indicated from the fact that the deed and petition reflect the map and so dispose of all the adjoining parts of the same subdivision that the descriptions in the one not only cover the description in the other but directly imply it.

To fully appreciate the correlation between deed and petition in relation to the underlying map, it is necessary to keep in mind that the boundaries for each of the two lots adjoining on either side of the intervening roadway as well as the boundaries for that roadway are described by those documents uniformly "as running from left to right (clockwise) and [each description employs] the azimuth system * * * in designating courses of the survey with zero or 360 degrees at due south; 90 degrees at due west; 180 degrees at due north; 270 degrees at due east," thereby conforming lot boundaries to the statutory requirement for a description of exterior boundaries of platted land. (R. L. H. 1945, § 12721.) Because all three parts of the trisected tract are each so described, the common boundary between lots A and B and that between lots B and C are necessarily described in the deed by azimuths which are reversed from, and exactly 180 degrees either larger or smaller than, the azimuths employed by the petition to describe those same common boundaries. Such is the case whenever the identical line is depicted by two clockwise descriptions of coincident boundaries for adjoining lots. The difference, however, is essentially one of approach rather than one of description. The deed thus approaches each common boundary from an opposite direction than that taken by the petition to describe it but both documents measure it by the same distances as well as show it by the same courses and curves. A few illus-

trations will suffice. When the petition joins one line to East Manoa Road by "a curve to the left with a radius of 20.0 feet," the deed joins it by "a curve to the right with a radius of 20.0 feet." A converse joinder curve is similarly described for the other line. When the petition runs one line from that point of joinder up to "the middle of East Manoa Stream," the deed runs it down therefrom to the same point. The reverse is true for the other line. When the petition runs the southwest boundary of lot B along a course designated by the azimuth 127° 52′ to the northwest for a distance of 320 feet, the deed runs it as the northeast boundary of lot A along the same course, *i.e.*, "along the southwest side of 40-foot roadway," for the same distance of 320 feet but from the opposite direction by azimuth 307° 52′, which is the reverse of the azimuth 127° 52′ and exactly 180 degrees greater than it. That process of describing the identical line from the opposite direction by reversed azimuth is repeated for the other common boundary line. Such a correlation in accordance with the same map of subdivision is accentuated by the deed's designation of the condemned land as a "40-foot roadway" and renders it conclusive that the deed intended to make common boundaries with that roadway. No question, therefore, can reasonably arise of a mere coincidence in the sense of a casual connection. On the contrary, the deed in defining, as it does, the boundaries of the lots conveyed to be along each side of the roadway not only bespeaks of a deliberate coincidence of common boundaries but manifests an unmistakable intent to bound those lots on that roadway as the only portion of defendant's land not conveyed.

It is well settled in this jurisdiction and by unanimity of authorities in other jurisdictions that when a conveyance describes the conveyed parcel as bounded by a street or way and the conveyor owns the street or way, the con-

veyee acquires an easement with respect to such street or way, although the conveyance refers to no map or plat and says nothing about the creation of an easement concerning the street or way and even though such street or way is merely a proposed one which has never been opened or dedicated to public use. (*Kamai* v. *Trask*, 8 Haw. 75; *Goo, et al.* v. *Young*, 36 Haw. 132; *Petitpierre* v. *Maguire, et al.*, 155 Cal. 242, 100 Pac. 690; *Malone* v. *Jones*, 211 Ala. 461, 100 So. 831; *Casella* v. *Sneirson*, 325 Mass. 85, 89 N. E. [2d] 8; *Holloway* v. *Delano*, 64 Hun. 34, 18 N. Y. S. 704; *In re Thirty-First (Patterson) Ave.*, 273 N. Y. S. 757; *Burkhard* v. *Bowen*, 32 Wash. [2d] 613, 203 P. [2d] 361; 17 Am. Jur., Easements, § 46, p. 957; 19 C. J., Easements, § 134, p. 932; 28 C. J. S., Easements, § 40, p. 704; 3 *Powell on Real Property*, § 409, p. 412; 2 *Thompson on Real Property*, § 470, p. 26.)

The rule was declared in *Kamai* v. *Trask*, 8 Haw. 75, to be as follows: "Grantor of land describing the same by a boundary on a street or way, if he be the owner of such adjacent land, is estopped from setting up any claim, or doing any acts inconsistent with the grantee's use of the street or way; and such estoppel would also apply to his heirs, or those claiming under him." This court in that case cited with approval the case of *Transue* v. *Sell*, 105 Pa. 609, for the proposition "that when a grantor sold and conveyed lots, bounding them on an alley, he not only conveyed the use of the alley as appurtenant to the lots bounded thereon, but thereby dedicated it to public use." It qualified that proposition, however, by pointing out that the right of the grantee to make use of the way is "a matter of private right, and in no way depends upon the question of whether the public have acquired a right of way or not." The rule was applied to a conveyance "by metes and bounds, one course defining the westerly boundary [as] along 20-foot Roadway" wherein this court

stated the rule, as quoted from 17 American Jurispru-
dence, Easements, Section 46, page 957, that "where a
conveyance of land calls for a way or street as a boundary
and the grantor owns the fee in the land represented as
the way or street, he is estopped, as against the grantee,
to deny that it is a way or street; and an easement there-
in passes to the grantee by implication of law." (*Goo, et
al.* v. *Young,* 36 Haw. 132, 138, 139. For a similar rule
with reference to implied covenants, see 14 Am. Jur.,
Covenants, Conditions and Restrictions, § 17, p. 494.)
This general rule, even though variously expressed to
meet varying situations, is the established law in Hawaii
by a long line of decisons. The basic reason for it is tersely
stated by Chief Justice Mansfield to be that "If you
[lessor] have told me in your lease that this piece of land
abuts on a road, you cannot be allowed to say that the
land on which it abuts is not a road." (*Roberts* v. *Karr,*
1 Taun. 495) As was said by the Oregon supreme court
in *Lankin* v. *Terwilliger,* 22 Ore. 97, 29 Pac. 268, the rule
"rests upon the fact that the grantor, by describing the
land as bounded by a way, when he is the owner of the
soil under the way, intends thereby to confer upon the
grantee, as appurtenant to the granted premises, the right
to use such way, and whether it be deemed to operate as
an implied grant, covenant, warranty, or estoppel, bind-
ing on the grantor, his heirs and assigns, is immaterial.
'The right itself would be inferred from the great principle
of construction,' says Mr. Chief Justice Shaw 'that every
grant and covenant shall be so construed as to secure to
the grantee the benefits intended to be conferred by the
grant, and that the grantor shall do nothing to defeat or
essentially impair his grant.'"

It is sought by the defendant to bring the case within
the limitation declared in some cases that a mere refer-
ence to a road or way for purposes of description solely,

as any other mark or monument might be referred to, does not convey an easement in such road or way or raise any estoppel on the owner. Whatever may be the extent of that limitation, it has no possible application here. The deed's conclusive intention to make actual boundaries in common with those of a designated roadway equals its manifest intention to bound the conveyed lots on that roadway. There is not the slightest ambiguity about that and, therefore, no parol or extrinsic evidence is admissible to construe it.

The deed's manifest intention is not affected by subsequent conduct of the parties. Thus it is immaterial that the grantee, shortly after the date of the deed's execution but pending the instant condemnation proceedings, acted consistently with the concept that it had a right of easement for road purposes by applying for a resubdivision of the conveyed lots into smaller lots for resale along the sides of the same "40-foot roadway" as that along which the original lots were sold, an offer of proof to that effect being properly denied by the trial judge. Nor is it material that the defendant, after selling the two original lots of the tract so as to reap during pendency of condemnation more than the full measure of benefits ordinarily to be gained by the owner of a subdivision because the construction of the dividing road within her subdivision would be at no expense to her, acted inconsistently with that concept by claiming the same rate of value for her roadway from the City condemning it that she had obtained from the sale of lots abutting upon it as though it were capable of being used for purposes other than those of a road to serve those lots. Certainly such a claim as to value is incapable of varying or contradicting the deed itself and to make it amounts to nothing more than a self-serving attempt to take conflicting positions for her own monetary advantage in contravention of the provisions of

statute under which she would be "allowed no compensation" because "the construction of the improvements [*i.e.,* a paved road on the portion of her tract sought to be condemned] in the manner proposed by the plaintiff" caused no severance damages whatsoever to the other portions not sought to be condemned but rather benefited them to the extent that the benefits far exceed the value of the condemned portion as well as the value of the entire unimproved tract at the date of summons. (R. L. H. 1945, § 314, as am.)

A reading of the deed suffices to demonstrate that it is no mere reference to a road for the deed to give the road's correct width and length as well as to designate the correct courses and curves for its two sides. Nor is the deed's reference to a "40-foot roadway" merely descriptive of the lots conveyed. On the contrary, that reference read in the light of the deed as a whole describes the roadway with a certainty equal to that of the petition itself. So read, it transcends a mere identifying mark or monument and calls for a roadway as an essential part of the subdivision not only to divide the two conveyed lots but to control their boundaries along its sides. In none of the cases relied upon for a different construction is the implication of easement so strengthened by the evidence. Nor is any one of them a case where all the surrounding circumstances are so strongly corroborative of the deed's clear intention to bound the granted premises on a road or way belonging to the grantor. On the contrary, the reverse is true so that each of those cases is distinguishable on the basis that the attending circumstances and the language of the deed negative any implication of easement. Such a case would be where in order to identify the conveyed premises reference is made to an abandoned public street no longer in existence (*King* v. *Mayor*, 102 N. Y. 171, 6 N. E. 395) or to an existing way or street as a starting

point. (*Talbert* v. *Mason*, 136 Iowa 373, 113 N. W. 918, 920.) Another would be where the described boundary is merely coincident with the side of a way or street as a casual connection or parallel therewith but independent of it and not controlled by it. (*Lankin* v. *Terwilliger*, *supra*.)

Kindred to the general rule is an equally well-settled one. It is the rule that where one lays out a tract of land owned by him into lots, and makes a plan thereof showing streets or ways, and sells according to such plan lots as bounding on such streets or ways without any limitation, he irrevocably devotes such portions marked as streets or ways to be used as such in so far as the grantees and their successors are concerned. It can make no difference that the tract is a small one divided into but two lots divided by a central road or way. Nor need the deed in such a case refer to a plat or map in order to come within the rule, if the deed itself so subdivides the tract into lots divided by a road or way that it is itself tantamount to a plan according to which the sale of those lots was made. (*Petitpierre* v. *Maguire, et al., supra,* cited with approval by this court in 36 Haw. 132, 152.) The instant case for more cogent reasons appears to fall within the spirit of that rule. The deed not only subdivides the defendant's tract into two lots divided by a designated "40-foot road-way" but for the purpose of selling those lots in effect adopted the same subdivision which had already been mapped by the City for the purpose of condemning that identical roadway as a public road. It thus operated as the exact complement of the pending eminent domain proceedings to effectuate that subdivision. Moreover, the deed more meticulously ties the connecting road or way of such subdivision to the abutting lots sold than would have been the case had it merely described those lots by lot number and reference to a plat. Under all the circumstances at-

tending its execution, the deed not only constituted a tacit acquiescence in the City's plan of condemnation but amounts to a dedicatory offer to the public of the condemned land for a roadway. On the other hand, the City impliedly accepted that offer when it instituted a new action to condemn that land for a public street, and thereby more effectively secured to the grantee the benefit of its easement. (See *In re Brigham St.*, 241 N. Y. S. 156, 136 Misc. 808; *In re Pearsall St.*, 135 N. Y. S. 763; *Atlantic City* v. *Groff*, 64 N. J. L. 527, 45 Atl. 916.) The authorities, however, disagree whether the private easement, created by the deed, merges with the public easement, created on dedication, or whether it is merely suspended thereby and will revive if the public right is afterward abandoned. Although purely academic, that question is sufficiently related to the problem at hand for it to be pertinent to point out that the better view is that the private easement becomes subordinated to the public easement but survives its extinguishment. This serves to illustrate the indestructible character of the private easement in support of this court's qualification in *Kamai* v. *Trask, supra,* that the easement in the grantee is "a matter of private right" independent of the existence of a public right. (See *Hawkes* v. *City of Philadelphia*, 264 Pac. 346, 107 Atl. 747. For collection of authorities see 19 C. J. 933, § 135.) The instant case cannot be distinguished in principle from *Re Land Title, Yamaguchi*, 39 Haw. 608, wherein it was declared by headnote that "where lots are sold bounded by roadways, whether designated as such or designated by implication with reference to a land court subdivision map, a dedication occurs to the use of the purchasers and to the public of the roadways so created." Nor can it be doubted in this case that the grantee's rights under the deed are the same as they would have been had the owner prior to sale made and filed in the registrar's

office at the bureau of conveyances or in the land court a plat of her land showing the same subdivision according to which not only the grantee had purchased but the City had thereafter condemned. (See *Prescott* v. *Edwards,* 117 Cal. 298, 49 Pac. 178.) Certainly, the order of sequence is immaterial so long as the essential facts are the same. It is obvious in this case that under either the general rule or its kindred rule, an easement was created by the deed encumbering for road purposes the grantor's naked fee to the soil of the roadway in favor of the grantee as the abutting owner.

For these reasons, it is my opinion that the judgment should have been affirmed.